**In re Milton BRATEN, Alleged Debtor.**

**Bankruptcy No. 86 B 20433.**

United States Bankruptcy Court,
S.D. New York.

May 19, 1988.

---

Lawson F. Bernstein, P.C., New York City, pro se creditor, c/o Austrian, Lance & Stewart, P.C.

Barr & Faerber, Spring Valley, N.Y., for alleged debtor.

## DECISION ON CREDITOR'S MOTION TO JOIN IN THE INVOLUNTARY PETITION

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

The debtor, Milton Braten, disputes the claim of his former attorney, Lawson F. Bernstein, P.C. ("Bernstein"), and contends that Bernstein is not a qualified creditor under 11 U.S.C. § 303(c) who may intervene in the involuntary Chapter 7 bankruptcy case that was originally commenced against him by a single creditor, the Hong Kong and Shanghai Banking Corporation ("Hong Kong").

On October 1, 1986, Hong Kong served and filed with this court an involuntary petition for relief against the debtor pursuant to 11 U.S.C. § 303(b)(2) under Chapter 7 of the Bankruptcy Code. The petitioning creditor holds a claim against the debtor in the sum of $1,493,384.84, based on a judgment against the debtor entered in the County of Westchester, State of New York on July 15, 1985. In his answer filed with this court on October 22, 1986, the debtor denied the allegation that he had fewer than 12 creditors. Thereafter, Bankers Trust Company ("Bankers") sought to intervene in the involuntary Chapter 7 case over the debtor's objections. Bankers holds a written unconditional guaranty which the debtor issued to Bankers with respect to the obligations of the debtor's corporation, known as Braten Apparel Corporation ("BAC"). On September 5, 1974, BAC filed a petition for an arrangement pursuant to Chapter XI of the former Bankruptcy Act of 1898. BAC's confirmed plan of arrangement was set aside in June of 1982 on the ground that BAC had fraudulently concealed its ownership interest in Brookfield Clothes, Inc. *See In re Braten Apparel Corporation*, 21 B.R. 239 (Bankr. S.D.N.Y.1982), *aff'd* 26 B.R. 1009 (S.D.N.Y. 1983), *aff'd* without opinion 742 F.2d 1435 (2d Cir.1983). Pursuant to a decision of this court, dated July 14, 1987, Banker's motion to intervene in this involuntary Chapter 7 case, so as to join in the involuntary petition filed by Hong Kong, was granted. *In re Braten*, 74 B.R. 1021 (Bankr.S.D.N.Y.1987).

Pursuant to a motion returnable on the adjourned date of May 17, 1988, Bernstein seeks to intervene as a third petitioning creditor in this involuntary Chapter 7 case. Bernstein alleges that he is the successor attorney of the law firm of Bernstein, Obstfeld & Schwed, P.C. and that his claim against the debtor arose out of legal services which he rendered to the debtor as well as to the debtor's corporation, BAC, and to Daniel Rhoades, who is an attorney who represented the debtor's corporation, BAC, and who requested Bernstein to assist him in performing legal services for BAC. Bernstein maintains that after BAC's Chapter XI confirmation order was set aside in 1982, he continued to perform legal services for the debtor and Rhoades, both individually, with regard to various matters and in various actions. Bernstein contends that he performed legal services for the debtor individually between July 1, 1982 and March 1, 1983 and that the debtor agreed to pay for these services, totalling $496,849.63. Bernstein asserts that $215,000 in billings was paid by the debtor, leaving a balance due of $281,849.63, including disbursements of $24,339.00. Bernstein submitted with his motion papers copies of twelve post-dated checks which the debtor delivered to Bernstein as a partial payment, totalling $80,000. The checks were drawn on the account of one of the debtor's other companies, known as Be Be Blond, Ltd. Bernstein alleges that he never performed any legal services for this company. The first three checks issued by Be Be Blond, Ltd. were returned for insufficient funds. The remaining checks were never deposited by Bernstein.

## FINDINGS OF FACT

1. Bernstein testified that at no time during the period from July 1, 1982 through March 1, 1983, did the debtor complain about the legal services which Bernstein performed and for which monthly billing statements were submitted to the debtor.

2. Bernstein also testified without contradiction that the debtor personally agreed to pay for the legal services which Bernstein performed for the debtor and for his companies, at rates which were agreed upon by the parties. Additionally, Bernstein maintains that the debtor and Daniel Rhoades were sued personally by an entity known as ACLI Government Securities, Inc. and that Bernstein and his law firm represented the defendants. Bernstein also represented the Debtor, BAC and Rhoades in various other matters.

3. Pursuant to a summons and complaint dated March 15, 1984, the firm of Bernstein, Obstfeld & Schwed, P.C. commenced an action in the Supreme Court of the State of New York, County of New York, against the debtor, BAC and Daniel Rhoades, for unpaid legal fees. The debtor submitted an answer which contained denials, affirmative defenses and counterclaims. In the affirmative defenses, the debtor admitted that Bernstein's law firm performed legal services for the debtor, individually, but that the law firm also "represented other parties in those certain matters as well as Braten."

4. Thus, the debtor admits that Bernstein's law firm performed legal services for him, but that Bernstein's law firm agreed to look to other parties for payment of what the law firm did in the alleged matters.

5. In a decision dated April 13, 1987, the state court judge dismissed the debtor's counterclaims against Bernstein's law firm. The state court judge also denied the motion by the debtor and Rhoades to dismiss the complaint for legal services because the allegations in the complaint "raise material issues of fact that cannot be determined on the papers presented ...".

6. The debtor testified that he was not indebted to Bernstein and that the payments which Bernstein's firm previously received from BAC satisfied his personal indebtedness for their legal services.

7. Bernstein testified that he is the successor to the law firm of Bernstein, Obstfeld & Schwed, P.C. However, no written assignment or other documentary evidence was produced to support this conclusion.

## DISCUSSION

The commencement of an involuntary Chapter 7 case against a debtor who has 12 or more creditors requires three or more entities as petitioning creditors, each of which holds a claim against the debtor that is not contingent as to liability or the subject of a bona fide dispute, provided that their claims aggregate at least $5,000 more than the value of any liens against the debtor's property which the petitioning creditors may hold. 11 U.S.C. § 303(b)(1). The requirement that the petitioning creditors' claims are not subject to "a bona fide dispute" is of relatively recent vintage, having resulted by the July 10, 1984 amendments of the Bankruptcy Code pursuant to the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333, 392 (1984) ("BAFJA"). Prior to the 1984 amendment to 11 U.S.C. § 303(b)(1), some courts held that a petitioning creditor had standing to file an involuntary petition even if its claim was disputed. *In re Covey*, 650 F.2d 877, 881–82 (7th Cir.1981); *In re Dill*, 30 B.R. 546, 549 (BAP 9th Cir.1983), *aff'd* 731 F.2d 629, 631 (9th Cir.1984). Other courts, however, expressed doubt that a seriously disputed claimholder could qualify as a petitioning creditor in an involuntary bankruptcy case. *B.D. International Discount Corp.*, 701 F.2d 1071, 1076 (2d Cir.1983) *cert. denied*, 464 U.S. 830, 104 S.Ct. 108, 78 L.Ed.2d 110 (1983); *In re First Energy Leasing*, 38 B.R. 577, 582 (Bankr.E.D.N.Y.1984). However, the amendment to 11 U.S.C. § 303(b)(1) that a petitioning creditor's claim should not be the subject of "a bona fide dispute" was not similarly added to 11 U.S.C. § 303(c), which deals with rights of

other creditors to join afterwards in an involuntary petition with the same effect as an original petitioning creditor. Thus, 11 U.S.C. § 303(c) reads:

(c) After the filing of a petition under this section but before the case is dismissed or relief is ordered, a creditor holding an unsecured claim that is not contingent, other than a creditor filing under subsection (b) of this section, may join in the petition with the same effects as if such joining creditor were a petitioning creditor under subsection (b) of this section.

The legislative history with respect to subsection (c) states as follows:

Subsection (c) permits creditors other than the original petitioning creditors to join in the petition with the same effect as if the joining creditor had been one of the original petitioning creditors. Thus, if the claim of one of the original petitioning creditors is disallowed, the case will not be dismissed for want of three creditors, or want of $5,000 in petitioning claims if the joining creditor suffices to fulfill the statutory requirements. (HR Rep No. 95–595, 95th Cong. 1st Sess 322 (1977); S Rep No. 95–989, 95th Cong. 2d Sess 33 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5819, 6278.

■ Manifestly, the absence of "a bona fide dispute" should also be required of an intervening petitioning creditor in order to harmonize this provision with the requirements for petitioning creditors under 11 U.S.C. § 303(b)(1), because a joining creditor is accorded the same effect as an original petitioning creditor. Therefore, since the joining creditor's status relates back to the commencement of the involuntary case, such joining creditor must satisfy the same qualifications required of petitioning creditors. Thus, not only must the joining creditor's claim not be contingent, but such claim should not be the subject of a bona fide dispute. The omission of the latter condition should be regarded as a legislative oversight.

■ The courts have applied different standards for determining whether or not "a bona fide dispute" exists, because the statutory language does not define this phrase. Some courts have applied a summary judgment standard and have concluded that there is no "bona fide dispute" if a summary judgment could be rendered regarding the claim. *In re Stroop*, 51 B.R. 210 (Bankr.D.Col.1985); *In re Cates*, 62 B.R. 179 (Bankr.S.D.Tex.1986). Other courts have balanced the interests of the creditor with those of the debtor. *In re Johnson Hawks, Ltd.*, 49 B.R. 823 (Bankr. D.Ha.1985); *In re Ross*, 63 B.R. 951 (Bankr.S.D.N.Y.1986); *In re Tikijian*, 76 B.R. 304 (Bankr.S.D.N.Y.1987). Both of these approaches were rejected by the Seventh Circuit Court of Appeals on the theory that the summary judgment standard did not account for the possibility of a substantial dispute as to the proper application of law notwithstanding the existence of undisputed facts, whereas the balancing standard was rejected as placing too much weight on the subjective factor of the parties' good faith. *In re Busick*, 831 F.2d 745 (7th Cir.1987). Accordingly, the Seventh Circuit agreed with the standard employed by the court in *In re Lough*, 57 B.R. 993, 996–97 (Bankr.E.D.Mich.1986) as being most compatible with the Congressional intent; that an involuntary petition should not be used as a club against debtors who have bona fide questions about their liability, but who would rather pay up than suffer the stigma of involuntary proceedings. Accordingly, the Seventh Circuit in the *Busick* case concluded that if there is a bona fide dispute as to either the law or the facts, then the creditor does not qualify because the court is not required to determine the outcome of any dispute, only its presence or absence. Thus, the court should perform a limited analysis of the claims in issue in order to determine whether or not there exists genuine issues of facts or law that bear upon the debtor's liability. *In re Ramm Industries, Inc.*, 83 B.R. 815, 822 (Bankr.M.D.Fla.1988); *In re B.B.I., Ltd.*, 81 B.R. 227 (Bankr.E.D.N.Y. 1987).

■ In the instant case, the debtor contends that the payments which his corporation made to the intervening creditor's law

firm for their legal services also satisfied any personal liability that the debtor may have incurred for such services. Moreover, the debtor maintains that he was not personally liable for the legal services because, as alleged in his ninth and twelfth affirmative defenses, in his state court answer, Bernstein's law firm performed legal services "primarily on behalf of other parties" and they "agreed to look to other parties to pay for what [the law firm] did in said matters." Accordingly, there exists a bona fide dispute as to Bernstein's claim, both as a matter of fact and as a matter of law. Hence, Bernstein does not qualify as an intervening petitioning creditor because his claim is the "subject of a bona fide dispute" within the meaning of 11 U.S.C. § 303(b)(1), which disqualifies him under 11 U.S.C. § 303(c).

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A) and (B).

2. The purported intervening creditor, Lawson F. Bernstein, holds a claim against the debtor which is the subject of a bona fide dispute asserted by the debtor, with the result that Bernstein does not qualify as a creditor who may join in the involuntary petition in this Chapter 7 case pursuant to 11 U.S.C. § 303(c) with the same effect as if such joining creditor were a petitioning creditor within the meaning of 11 U.S.C. § 303(b)(1).

3. In light of the foregoing, Bernstein's motion to intervene in this involuntary Chapter 7 case pursuant to 11 U.S.C. § 303(c) is dismissed.