**In re James KUJAWA d/b/a Restaurant Builders, Alleged Debtor.**

**James Kujawa d/b/a Restaurant Builders, Movant.**

**Bankruptcy No. 89–05120(2).**

United States Bankruptcy Court, E.D. Missouri, E.D.

April 4, 1990.

Mitchell A. Margo, Clayton, Mo., for Alleged Debtor.

J.B. Carter, St. Louis, Mo., for Frank Ross Hurley and Gittemeier Bros. Interiors, Inc.

Richard Schwartz, St. Louis, Mo., for Tridon Corp. and Billboard Café.

Francis X. Buckley, Jr., St. Louis, Mo., for Pickett Ray & Silver.

John O'Connor, Union, Mo., for Christopher and Long.

Joe Guffey, St. Louis, Mo., for R.J. Carson, Inc.

Ron Fralicx, St. Charles, Mo., for St. Peters Supply Co.

Sidney A. Gould, Attorney at Law, St. Louis, Mo.

James S. Cole, Asst. U.S. Trustee, St. Louis, Mo.

## MEMORANDUM OPINION

DAVID P. McDONALD, Chief Judge.

## I. JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A), which the Court may hear and determine.

## II. PROCEDURAL BACKGROUND

This involuntary Chapter 7 case was filed on December 4, 1989. On February 21, 1990, Tridon Corporation ("Tridon") and Billboard Cafe at Lucas Plaza, Inc. ("Billboard") filed their Motion To Intervene And To Join In The Involuntary Petition. On March 2, 1990, alleged Debtor James Kujawa d/b/a Restaurant Builders filed its Motion To Dismiss Intervening Creditors' Petition To Intervene And To Disqualify Counsel. In addition, the alleged Debtor filed a Memorandum in support of its Motion.

A hearing was held on March 5, 1990, at which time the Court heard arguments on the Motion To Disqualify Counsel. A supplemental hearing was held on March 7, 1990. The intervening creditors filed their Memorandum in Opposition on March 12, 1990 and the alleged Debtor filed its Reply on March 14, 1990. A telephone conference was conducted by the Court on March 27, 1990. At that time, attorneys for the alleged Debtor and the intervening creditors agreed to submit Motions E and G to the Court on the pleadings, record and briefs.

## III. FACTUAL BACKGROUND

James Kujawa, alleged Debtor herein, is a building contractor doing business as Restaurant Builders. In January, 1989, Kujawa and Paul A. Ebeling, together with their jointly owned entity, Billboard Cafe at Lucas Plaza, Inc., entered into an agreement to build, co-own and operate the Billboard Cafe. In addition, Kujawa was contracted to build offices for Tridon Corporation. He and Ebeling held shares in Tridon, a corporation formed in December, 1988, with the assistance of general counsel and fellow shareholder, Richard E. Schwartz, Esq. Mr. Schwartz also incorporated Billboard in December, 1988, and continues to serve as general counsel to both companies. The companies now move to intervene and join in the involuntary petition.

From January until May, 1989, Mr. Kujawa received payments from Cooperative Management Company, the owner of the building where both Tridon and Billboard are located, as he completed certain phases of the construction work. In return, Kujawa supplied lien waivers to both Tridon and Billboard. By mid-May 1989, however, a dispute arose concerning the construction of both the offices and the restaurant. Mr. Kujawa ceased working on the projects on approximately May 15, 1989. The dispute surrounding the two projects continued through the Fall of 1989 and culminated with the filing of this involuntary Chapter 7 proceeding. From the testimony presented, it is apparent that Paul Ebeling solicited Mr. Kujawa's trade creditors and encouraged them to file the involuntary petition which, through his two companies, he now seeks to join. For his part, Mr. Kujawa filed a mechanic's lien against Tridon and Billboard on January 9, 1990.

Mr. Kujawa employed Richard Schwartz & Associates Ltd. as his attorneys from early 1988 until approximately September

1, 1989. Richard E. Schwartz personally represented Mr. Kujawa in at least five lawsuits in that period and advised him on various other matters. In August of 1989, Mr. Kujawa considered filing a bankruptcy petition; however, by letter dated August 24, 1989, his attorney of record, Richard E. Schwartz, recommended against such a filing. Throughout, Mr. Schwartz had access to Kujawa's business and personal financial information and currently retains copies of those files. During the course of their attorney-client relationship, Schwartz and Kujawa even shared offices and had adjoining desks. The scope of the relationship only can be described as pervasive.

On December 4, 1989, Sidney A. Gould, Esq., an attorney affiliated with Richard Schwartz & Associates, Ltd., filed this involuntary Chapter 7 case on behalf of Kujawa's creditors. These creditors supplied labor and materials to the Tridon and Billboard construction projects. Mr. Gould withdrew from the case on January 12, 1990; the original petitioning creditors have retained other counsel. Richard Schwartz & Associates Ltd. filed its Entry of Appearance on behalf of the proposed intervening creditors, Tridon and Billboard, on February 21, 1990. The law firm also filed as an intervening creditor in these proceedings on March 7, 1990.

## IV. DISCUSSION AND ANALYSIS

### A. *Creditors' Motion To Join In The Involuntary Petition*

■ The commencement of an involuntary Chapter 7 case against a debtor who has 12 or more creditors requires three or more entities as petitioning creditors, each of which holds a claim against the debtor that is not contingent as to liability or the subject of a bona fide dispute, provided that their claims aggregate at least $5,000 more than the value of any liens against the debtor's property which the petitioning creditors may hold. 11 U.S.C. § 303(b)(1). The language contained in Section 303(b)(1) disqualifying an entity which holds a claim that is the subject of a bona fide dispute was added to the Bankruptcy Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333, 392 (1984). However, the authors of the amendment did not modify the language of 11 U.S.C. § 303(c), which describes the rights of creditors seeking to join in an involuntary petition after its initial filing. Section 303(c) reads as follows:

(c) After the filing of a petition under this section but before the case is dismissed or relief is ordered, a creditor holding an unsecured claim that is not contingent, other than a creditor filing under subsection (b) of this section, may join in the petition with the same effect as if such joining creditor were a petitioning creditor under subsection (b) of this section. 11 U.S.C. § 303(c).

Although the language of § 303(c) does not included the phrase "bona fide dispute", it is implicit that an intervening creditor must satisfy the same requirements set out for petitioning creditors under § 303(b)(1). *See,* 2 Collier On Bankruptcy ¶ 303.33 at 303–111 (Matthew Bender, 15th ed 1989). As Judge Schwartzberg has noted,

the absence of a "bona fide dispute" should also be required of an intervening petitioning creditor in order to harmonize this provision [§ 303(c)] with the requirements for petitioning creditors under 11 U.S.C. § 303(b)(1), because a joining creditor is accorded the same effect as an original petitioning creditor.... The omission of the [bona fide dispute language] should be regarded as a legislative oversight. *In re Braten,* 86 B.R. 340, 343 (Bankr.S.D.N.Y.1988).

The courts have formulated differing standards for determining whether a debt is the subject of a bona fide dispute. In *In re Johnson Hawks, Ltd.,* 49 B.R. 823 (Bankr.D.Hawaii 1985), the court took a subjective approach and inquired into the parties' respective intentions. The court defined a bona fide dispute as one in which an assertion of a claim or right made in good faith and without fraud or deceit on one side is met by contrary claims or allegations made in good faith and without fraud or deceit on the other side. *Id.,* at 830. This standard proved to be cumbersome and has not been widely adopted.

A more objective standard was formulated by the court in *In re Stroop*, 51 B.R. 210 (Bankr.D.Colo.1985). There, the court approached the issue as it would a motion for summary judgment and found that if the defense of the alleged debtor raises material issues of fact or law so that summary judgment could not be rendered as a matter of law in favor of the creditor, the claim would be deemed subject to a bona fide dispute. *Id.*, at 212. However, no widely accepted definitional standard emerged until Judge Rhodes issued his opinion in *In re Lough*, 57 B.R. 993 (Bankr.E.D.Mich.1986).

In *Lough*, the court conducted a comprehensive survey of the existing case law and analyzed the legislative history of the 1984 amendments to § 303. Explicitly rejecting the tests set out in *Johnston Hawks* and *Stroop, supra*, the court found that it was clear that Congress intended to disqualify a creditor whenever there is any legitimate basis for the debtor not paying the debt.[1] 57 B.R. at 997. Accordingly, the court held that if there is either a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts, then the petition must be dismissed. *Id.* The *Lough* standard has been adopted by virtually every court that has considered a bona fide dispute question. *See, e.g., Matter of Busick*, 831 F.2d 745, 749 (7th Cir. 1987); *Bartmann v. Maverick Tube Corp.*, 853 F.2d 1540, 1544 (10th Cir.1988); *B.D.W. Assoc. v. Busy Beaver Bldg. Ctrs.*, 865 F.2d 65, 66 (3rd Cir.1989).

In *Busick, supra*, the Seventh Circuit expressly adopted the *Lough* standard and held that Section 303 does not require the court to determine the outcome of any dispute, only its presence or absence. 831 F.2d at 750. Therefore, "only a limited analysis of the claims at issue is necessary." *Id., citing, In re Busick* 65 B.R. 630, 637 (N.D.Ind.1986). Accordingly, this Court will conduct a limited inquiry into the intervening creditors' claims and determine whether there is a bona fide dispute as to either the law or the facts underlying their claims.

■ The Court finds that there are numerous factual disputes surrounding the intervening creditors' claims. With respect to the construction contracts, the contract amounts are unclear, the scope of work is subject to question, and the parties to the purported contracts are not clearly identified. Similarly, nagging legal questions remain unresolved. The inflammatory allegations surrounding the "embezzlement" charge are legitimately subject to dispute as are the charges related to the claims for monies had and received. Accordingly, the Court finds that all of the claims asserted by the intervening creditors are currently the subject of bona fide dispute and, as such, holds that the creditors do not qualify as intervening creditors under 11 U.S.C. § 303(c). Therefore, the Motion To Join In The Involuntary Petition filed by Tridon Corporation and Billboard Cafe at Lucas Plaza, Inc. is DENIED.

1. The court noted that the rationale underlying the 1984 amendment was explained by its proponent as follows:

> The problem can be explained simply. Some courts have interpreted section 303's language on a debtor's general failure to pay debts as allowing the filing of involuntary petitions and the granting of relief even when the debtor's reason for not paying is a legitimate and good-faith dispute over his or her liability. *This interpretation allows creditors to use the Bankruptcy Code as a club against debtors who have bona fide questions about their liability, but who would rather pay up than suffer the stigma of involuntary bankruptcy proceedings.*
> My amendment would correct this problem. Under my amendment, the original filing of an involuntary petition could not be based on debts that are the subject of a good-faith dispute between the debtor and his or her creditors. In the same vein, the granting of relief could not be premised solely on the failure of a debtor to pay debts that were legitimately contested as to liability or amount.
> *I believe this amendment, although a simple one, is necessary to protect the rights of debtors and to prevent misuse of the bankruptcy system as a tool of coercion.* I also believe it corrects a judicial misinterpretation of existing law and congressional intent as to the proper basis for granting involuntary relief. 30 Cong.Rec. S7618 (June 19, 1984) (comments of Senator Baucus). *Lough*, 57 B.R. at 996 (quoting *In re Henry*, 52 B.R. 8, 9–10 (Bankr.S.D.Ohio 1985)) (emphasis added).

### B. Creditors' Motion To Intervene Under Rule 2018

The intervening creditors argue in the alternative that they should be permitted to join this involuntary petition pursuant to Bankruptcy Rule 2018. They assert that they are "interested parties" to the present action and should be allowed to intervene. Rule 2018 reads, in pertinent part, as follows:

(a) **Permissive Intervention.** In a case under the Code, after hearing on such notice as the court directs and *for cause shown*, the court *may* permit any interested entity to intervene generally or with respect to any specified matter. (emphasis added).

The Rule provides interested entities with an opportunity to be heard in a bankruptcy case. Still, the language of the Rule clearly indicates that the decision to grant an entity leave to intervene remains entirely within the court's discretion.

The Court finds that the intervening creditors have not demonstrated that they are interested parties entitled to intervention under Rule 2018. The creditors are seriously mistaken when they assert that they are entitled to intervention in an involuntary petition as a matter of right. Intervening Creditors' Memorandum at p. 15. The case law clearly establishes that intervention under Rule 2018(a) will be permitted at the discretion of the court. *See, e.g., In re Ionosphere Clubs, Inc.* 101 B.R. 844, 853 (Bankr.S.D.N.Y.1989). Therefore, the Court finds that permissive intervention for these creditors is not appropriate and holds that creditors' Motion To Intervene shall be, and is hereby, DENIED.

### C. Alleged Debtor's Motion To Disqualify Counsel

Alleged Debtor, James Kujawa, requests that this Court disqualify Richard Schwartz & Associates from this involuntary Chapter 7 proceeding. Furthermore, Kujawa seeks recovery of costs and attorneys fees expended in conjunction with its motion. The extreme nature of the remedy requires the Court to carefully examine the specific circumstances presented in the case. Thereafter, the Court will apply the standards of professional conduct prescribed by the United States District Court for the Eastern Judicial District of Missouri.[2] More precisely, the Court will approach the issue with reference to Rules 1.6 and 1.9 of the Rules of Professional Conduct which govern an attorney's ethical obligations to former clients. Mo.Sup.Ct. Rule 4, Rules 1.6 and 1.9 (V.A.M.R.1989). Rule 1.9(a) clearly states that:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.... *Id.*

Richard Schwartz & Associates Ltd., as attorneys for the proposed intervening creditors, have acknowledged that they represented James Kujawa in at least four different lawsuits over the past two years. In addition, the evidence presented at the hearing on March 5, 1990, reveals that Mr. Schwartz had intimate knowledge of Mr. Kujawa's personal and business dealings. Although Schwartz & Associates never represented Mr. Kujawa in a lawsuit against either of the proposed intervening creditors, they retain detailed information about Mr. Kujawa that is substantially related to the adverse claims asserted on behalf of Tridon and Billboard. Significantly, Mr. Schwartz counseled Mr. Kujawa on bankruptcy matters as recently as August 24, 1989. Mr. Kujawa has not consented to the representation of the proposed intervening creditors by Schwartz & Associates.

---

**2.** Local Rule 2(G)(2) states:

\* \* \* \* \* \*

The Code of Professional Responsibility adopted by this Court is the Code of Professional Responsibility adopted by the Supreme Court of Missouri, as amended from time to time by that Court, except as otherwise provided by specific rule of this Court after consideration of comments by representatives of bar associations within the State of Missouri. (*note,* the Missouri Supreme Court repealed the Code of Professional Responsibility and adopted the Rules of Professional Conduct on August 7, 1985, effective January 1, 1986).

Courts have long held that confidential disclosures, actual or presumed, necessitate disqualification of an attorney when he represents an adverse interest in a substantially related matter. *See, e.g., State of Arkansas v. Dean Foods Products Company, Inc.,* 605 F.2d 380, 384–85 (8th Cir. 1979); *Fred Weber, Inc. v. Shell Oil Co.,* 566 F.2d 602 (8th Cir.1977), cert. den. 436 U.S. 905, 98 S.Ct. 2235, 56 L.Ed.2d 403 (1978).[3] *See also, Matter of Davenport Communications Limited Partnership,* 109 B.R. 362 (Bankr.S.D.Iowa 1990); *Matter of Global Video Communications Corporation,* 102 B.R. 868 (Bankr.M.D.Fla. 1989). Therefore, this Court must find that the law firm of Richard Schwartz & Associates is disqualified from this involuntary Chapter 7 proceeding.[4] Alleged Debtor's Motion To Disqualify Counsel, Schwartz & Associates, Ltd., shall be, and is hereby, GRANTED.

■ The Court takes notice of the fact that Richard E. Schwartz has been disqualified in connection with at least two other cases before the United States Bankruptcy Court For The Eastern District Of Missouri and, as a consequence, he should be fully apprised of the ethical standards governing the practice of law before this Court. *See, In re Charles D. Schmitt,* Case No. 88–00430–BKC–JJB (Bankr.E.D.Mo.1988); *In re Charles Schmitt & Co.,* Case No. 88–00492–BKC–JJB (Bankr.E.D.Mo.1988). Accordingly, pursuant to the provisions of Bankruptcy Rules 1018 and 7054(b), alleged Debtor shall submit for Court approval a schedule of costs and attorney fees incurred in connection with, but solely limited to, its Motion To Disqualify Counsel.

An Order consistent with this Memorandum Opinion will be entered this date.

### ORDER

For the reasons set forth in the Memorandum Opinion filed this date, it is

ORDERED that

(1) The Motion To Join In The Involuntary Petition filed February 21, 1990, on behalf of proposed intervening creditors, Tridon Corporation and Billboard Cafe at Lucas Plaza, Inc., shall be, and is hereby, DENIED;

(2) The Motion To Intervene filed February 21, 1990, by Tridon Corporation and Billboard Cafe at Lucas Plaza, Inc. shall be, and is hereby, DENIED;

(3) The Motion To Disqualify Counsel, Richard Schwartz & Associates, Ltd., filed by alleged Debtor, James Kujawa d/b/a Restaurant Builders, on March 2, 1990, shall be, and is hereby, GRANTED; and

(4) The alleged Debtor shall file with the Clerk of the Court and with a copy to Richard Schwartz & Associates, Ltd., within ten (10) days of the entry of this Order, a schedule of costs and attorneys fees incurred by it in connection with, but solely limited to, its Motion To Disqualify Counsel. Any objections to the schedule of costs and fees shall be filed with the Court within five (5) days thereafter. In the event that no such objections are filed, the Court will approve the schedule of costs and attorney fees without hearing.

**In re Frederick J. SCHUTTE, III, and Barbara A. Schutte, Debtors.**

**Bankruptcy No. 86–02607–BKC–JJB.**

United States Bankruptcy Court, E.D. Missouri, E.D.

April 5, 1990.

---

**3.** The Court notes that *Dean Foods* and *Fred Weber* were overruled on other grounds by *Firestone Tire and Rubber Co. v. Risjord,* 612 F.2d 377, 378 (8th Cir.1980). The precedential value of *Dean Foods* and *Fred Weber* remains unchanged in all other respects. *See, Federal Deposit Ins. Corp. v. Amundson,* 682 F.Supp. 981, 985 at n. 3 (D.Minn.1988).

**4.** The Court is aware that Schwartz & Associates, Ltd. has filed an intervening claim on its own behalf. The firm will be permitted to participate in this involuntary proceeding *only* to the extent necessary to pursue its claim for attorneys fees.

John V. LaBarge, Jr., Kirkwood, Mo., trustee.

Charles W. Riske, Kirkwood, Mo., for trustee.

Richard Sheerar, St. Louis, Mo.

Hyatt Legal Services, Bridgeton, Mo.

## FINDINGS AND CONCLUSIONS

JAMES J. BARTA, Bankruptcy Judge.

The matters being considered here are the applications of counsel for the allowance of legal fees. Upon consideration of the record as a whole, the Court enters the following findings and conclusions.

This is a core proceeding pursuant to Section 157(b)(2)(A), (B), (C) and (O).

The Debtors commenced this case by filing a Petition for relief under Chapter 13 on October 17, 1986. The Petition identified Richard C. Sheerar as the Debtors' attorney.

The disclosure of fees statement filed on October 17, 1986, indicated that the Debtors had paid their attorney the amount of $720.00 and that no additional money was to be paid.

Upon the Debtors' written request, the Chapter 13 case was converted to a case under Chapter 7 on January 15, 1987. The Debtors' written motion contained the following statement over the signature of the Debtors' counsel: "Hyatt Legal Services, Richard C. Sheerar."

The disclosure of fees statement submitted with the motion to convert reflected that the Debtors had paid an additional $720.00 for legal services in connection with the conversion.

On September 16, 1987, Richard C. Sheerar filed a document titled, "Substitution of Attorney, Notice of New Address." The document substituted Richard C. Sheerar, individually for Hyatt Legal Services as the Attorney for the Debtors.

On September 21, 1987, Richard C. Sheerar filed an application for additional legal fees, requesting $1,236.25. This application was later withdrawn and amended.

Hyatt Legal Services filed the following documents on October 23, 1987: A notice of withdrawal as legal representative of the Debtors; an application for compensation for legal services rendered; and an objection to the allowance of compensation requested by Richard C. Sheerar.

On March 4, 1988, Hyatt Legal Services filed an entry of appearance as attorney for the Debtors. The entry of appearance form was not signed by the Debtors.

On April 20, 1988, Hyatt Legal Services filed a memorandum of withdrawal as attorney for the Debtors on the Debtors' request.

On August 1, 1988, Richard C. Sheerar filed a withdrawal of his original application for additional fees and filed an amended application requesting an additional $607.50.

Hyatt Legal Services filed an affidavit in support of its application for additional fees on February 10, 1989.

As part of the final meeting in the Chapter 7 case, the Debtors filed an objection to the allowance of the application of Hyatt Legal Services, arguing that they had contracted with Richard C. Sheerar to be their attorney for this bankruptcy case.

The Court further finds that immediately prior to and during the course of this bankruptcy case, the Debtors paid a total of $2,490.00 to Hyatt Legal Services; and that in this bankruptcy case, the attorney of record for the Debtors is Richard C. Sheerar; and that as attorney for the Debtors prior to September 16, 1987, Richard C. Sheerar was an employee of Hyatt Legal Services; and that in the circumstances presented in this case, the reasonable value of the legal services rendered to the Debtors is $1,350.00 for the period through September 16, 1987; and that therefore Hyatt Legal Services is entitled to compensation in the amount of $1,350.00 for legal services rendered to the Debtors through September 16, 1987; that Richard C. Sheerar is entitled to receive additional compensation for legal services rendered to the Debtors for their benefit in this case between September 29, 1987 and December 22, 1987 in the amount of $390.00, but not as a claim against this estate; and that Hyatt Legal Services has not established that it is entitled to additional compensation in this case.

The Court will not further address the apparent disagreement between Hyatt Legal Services and Richard C. Sheerar. This matter is more appropriately a subject of additional negotiations between counsel at their discretion.

Therefore, of the $2,490.00 paid by the Debtors and held in trust for them, Hyatt Legal Services may retain the amount of $1,350.00 for legal services rendered; Hyatt Legal Services is to pay to Richard C. Sheerar the amount of $390.00 as additional compensation for legal services rendered on behalf of the Debtors only; and that Hyatt Legal Services is to return to the Debtors the balance in the amount of $750.00 plus interest thereon from January 24, 1989 (the date of the Debtors' objection) through the date of payment, as a refund of excessive fees pursuant to 11 U.S.C. § 329(b) and Bankruptcy Rule 2017. *In re Riggin*, 40 B.R. 458 (Bankr.D.Md.1984).

### ORDER

Upon consideration of the record as a whole, and consistent with the Findings and Conclusions entered in this matter,

IT IS ORDERED that this hearing be concluded; and that the Debtors' objection to the application for allowance of compensation on behalf of Hyatt Legal Services, is sustained; and that Hyatt Legal Services is allowed the amount of $1,350.00 as compensation and fees for legal services rendered to the Debtors in this case; and that Richard C. Sheerar is allowed the amount of $390.00 as additional compensation for legal services rendered to the Debtors; and that Hyatt Legal Services is to pay to Richard C. Sheerar, said allowed amount of $390.00 from the money paid to it by the Debtors; and that Hyatt Legal Services is to refund to the Debtors the remaining balance of the money paid by the Debtors pursuant to Section 329(b) of Title 11 of the United States Code and Bankruptcy Rule 2017, in the amount of $750.00.

**In re Herbert Ralph JONES, Mary Ruth Jones, Debtors.**

**Bankruptcy No. 88–04170–SJ–7.**

United States Bankruptcy Court, W.D. Missouri.

Nov. 6, 1989.

Robert B. Miner, St. Joseph, Mo., for movant.

Bruce Strauss, Kansas City, Mo., trustee.

Charles R. Willis, St. Louis, Mo., for respondent.

ORDER DENYING DEBTORS' MOTION TO AMEND JUDGMENT OR FOR NEW TRIAL AND SUSTAINING OBJECTION OF FIRST NATIONAL BANK OF GALLATIN TO AMENDED SCHEDULE B-4 OF DEBTOR MARY JONES

KAREN M. SEE, Bankruptcy Judge.

## I. MOTION TO AMEND JUDGMENT OR FOR NEW TRIAL

Debtors' motion for amendment of the order of August 3, 1989, 102 B.R. 730, or for new trial is without merit and is denied for the following reasons. The motion does not raise any issues for this court to consider under F.R.C. P. 59. A motion under Rule 59(a) in a nonjury case should be based upon a manifest error of law or a mistake of fact, and a judgment should not be set aside except for substantial reasons. 11 Wright & Miller, Federal Practice and

Procedure: Civil 37, § 2804, citing *Solar Labs v. Cincinnati Advertising Products Co.*, 34 F.Supp. 783 (D.Ohio 1940), *appeal dismissed*, 116 F.2d 497 (6th Cir.1940). A motion under 59(a) or (e) should not serve merely as a means to relitigate a matter previously decided by the court. *Evans, Inc. v. Tiffany & Co.*, 416 F.Supp. 224, 244 (D.Ill.1976).

The argument in debtors' motion is that the court erred when it declined to follow the law pronounced in *In re Mitchell*, 73 B.R. 93 (Bankr.E.D.Mo.1987), urged by debtors as authority for their argument that debtors' interest in a lender liability cause of action is exempt property. Debtors are simply reasserting the same argument made at the hearing and in their original memorandum in support. The same argument does not become more convincing by reason of its reassertion in the form of a motion to amend judgment or for new trial.

■ As held in the original order of August 3, 1989, the present case is distinguishable from *Mitchell*. The rationale of *Mitchell* was limited to consideration of a personal injury cause of action, which was not subject to assignment or attachment, and is not applicable to the present situation involving a cause of action for fraud. The court did not err in failing to extend the effect of *Mitchell* beyond personal injury causes of action to a lender liability cause of action. Debtors' reliance on *Mitchell* is misplaced in that in connection with the Missouri exemption statutes, the debtor's lender liability cause of action based on fraudulent misrepresentation and other misconduct is distinguishable from a personal injury cause of action for the reasons set forth in the court's original order.

■ Even though the court distinguished *Mitchell* and did not decline to follow it, application of *Mitchell* would not have been mandatory in any event. *Mitchell*, an opinion of the U.S. Bankruptcy Court for the Eastern District of Missouri, was affirmed by unpublished opinions of the U.S. District Court for the Eastern District of Missouri and the Eighth Circuit Court of Appeals.[1] This court is not bound by the Eastern District Bankruptcy Court's holding in *Mitchell* because one court's decision is not binding upon other courts of equal rank. *Mueller v. Allen*, 514 F.Supp. 998 (D.Minn.1981), *aff'd*, 676 F.2d 1195, *cert. granted*, 459 U.S. 820, 103 S.Ct. 48, 74 L.Ed.2d 55, *aff'd*, 463 U.S. 388, 103 S.Ct. 3062, 77 L.Ed.2d 721. Further, this court is not bound by the citation to the unpublished opinion of the Eighth Circuit affirming *Mitchell* because unpublished Eighth Circuit opinions are not intended to create binding precedent nor may they be cited by parties as authority for their arguments. *In re Leimer*, 724 F.2d 744 (8th Cir.1984) (citing 8th Cir.Rule of App.Proc. 8(i) and Appendix 2, paragraph 3).[2] Thus, because the court is not bound by *Mitchell*, debtors' argument that the court erred in declining to follow the law as pronounced in *Mitchell* is without merit.

Although the court in the present case did not decline to follow *Mitchell* since it was so clearly distinguishable, the parties are directed to another recent opinion of this court in which the court did decline to follow *Mitchell*. See *In re Gaines*, 106 B.R. 1008, 1014–19 (Bankr.W.D.Mo.1989), a copy of which is attached for the parties' convenience.

## II. OBJECTION TO AMENDED SCHEDULE B–4 OF DEBTOR MARY JONES

On March 17, 1989, debtor Herbert Jones filed an amended Schedule B–4 of property

---

**1.** *In re Mitchell*, 73 B.R. 93 (Bankr.E.D.Mo. 1987), *aff'd*, No. 87–1062–C (4) (E.D.Mo. Oct. 28, 1987), *aff'd*, 855 F.2d 859 (8th Cir. June 24, 1988).

**2.** Rule 8(i) provides: "No party may cite an opinion that was not intended for publication by this or any federal or state court, except when the cases are related by virtue of an identity between the parties or the causes of action. *See* Plan for Publication of Opinions, § 3.

Appendix 2, Plan for Publication of Opinions, § 3 provides, in part: "Unpublished opinions, since they are unreported and not uniformly available to all parties, may not be cited or otherwise used in any proceedings before this 'court or any district court in this circuit' except when the cases are related by virtue of an identity between the parties or the causes of action."

claimed exempt which listed his interest in a lender liability cause of action against First National Bank of Gallatin. On August 3, 1989, the court entered its order sustaining First National Bank of Gallatin's objection to exempt property. Unlike her husband, debtor Mary Jones did not claim any interest in the cause of action as exempt until after the court had denied Mr. Jones' exemption by the order of August 3. Thereafter, on August 14, Mary Jones filed her separate amended Schedule B–4 of property claimed as exempt.

■ Mary Jones' late-filed amendment, filed only after a ruling on the merits of the identical exemption claimed by her husband, is untimely. However, in order to determine all the issues in the case, for purposes of discussion in the August 3 opinion, the court analyzed the interests of debtor Herbert Jones as if both debtors had listed their interests as exempt. It is unnecessary to reiterate the grounds for sustaining the objection of First National Bank of Gallatin previously set forth in the opinion of August 3, 1989, which is hereby incorporated by reference. The amended exemption of Mary Jones is denied for the reasons set forth in the order of August 3, 1989 and herein.

For the foregoing reasons, it is hereby

ORDERED that debtors' motion to amend the memorandum opinion and order dated August 3, 1989, or alternatively for a new trial is denied. It is further

ORDERED that First National Bank of Gallatin's objection is sustained to the amended exemption Schedule B–4 of debtor Mary Jones and that the Trustee is authorized to enter his appearance as plaintiff in the state court action.

**In re George Junior LUMSDEN & Betty Louise Lumsden, Debtors.**

**Bankruptcy No. 90–40025–W–13.**

United States Bankruptcy Court,
W.D. Missouri.

March 16, 1990.

Mark Ransom, Independence, Mo., for debtors.

Fred Bellemere, III, Kansas City, Mo., for Household Realty Corp.

Rick Fink, Chapter 13 Trustee.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

Debtors have filed this Chapter 13 proceeding in a last ditch effort to save their residence. Debtors have only four secured debts, which are: (1) the note secured by a first mortgage on their residence, (2) the note secured by a second mortgage on their residence, (3) the note secured by a mortgage on their 1984 family car; and (4) their note secured by a mortgage on a 1982 pickup. Debtors have only two unsecured debts—a bank credit card for $550.00 and a J.C. Penney account for $500.00. It is the holder of the second mortgage on the home that has objected to the confirmation of the

plan as violative of 11 U.S.C. § 1322(b)(2), alleging that the proposed plan impermissibly modifies its rights as a secured creditor possessing only a secured interest in the residence of the debtors.

In July of 1984, debtors procured a second mortgage loan from creditor in the amount of $21,774.45. Payments of $335.70 per month were only slightly more than interest accruing at 17.01% and were required for 60 months with a balloon of $19,642.08 required in July of 1989. Debtors apparently made the monthly installments, but could not make the balloon payment and foreclosure and this Chapter 13 filing were the last two chapters in this modern day tragedy. Debtor husband is retired and he receives $571.00 per month Social Security and $209.00 per month pension from his last employer. Debtor wife is employed and takes home $462.00 biweekly. Debtors' plan provides for a 100% payout to secured creditors over 5 years together with their contract rate of interest on the obligations. Unfortunately, the second mortgage lender does not desire a monthly payment for 60 more months even though its contractual interest rate of 17.01% might seem at least adequate for said extension. Said lender's objections to confirmation were duly heard and the undisputed facts as set out above established.

As this Court has mentioned before, it and many other bankruptcy courts have found divers ways to ameliorate the seeming harshness of 11 U.S.C. § 1322(b)(2). One of the more popular has been to find that the creditors while drafting their potentially adhesive contracts, ended up possessed of or claimed some type of security beyond the unadorned security interest in the debtor's residence. However, creditor with remarkable forbearance, has avoided all such heavy-handed excess in this case. Creditor neither possesses, claims, nor has ever claimed (by virtue of fair interpretation of all the words in the loan documents), any secured interest in anything other than the residence of the debtors.

This Court, and others, have even held that spreading an already matured balance on a mortgage over a reasonable period of time is permissible under 11 U.S.C. § 1322(b)(2). *In re Spader,* 66 B.R. 618 (W.D.Mo.1986). However, this Court has been unable to come to any conclusion other than that the law is, in this case, as creditor suggests and that to force creditor to now receive its contracted for and past due balloon payment over a period of five years is an unwarranted and impermissible interpretation of 11 U.S.C. § 1322(b)(2). Put another way, it sometimes becomes the unhappy lot of a Bankruptcy Judge to quit interpreting the law and start applying it. To do else is to fall into the trap described by Lord Acton.

Debtors' Chapter 13 plan is DENIED CONFIRMATION this 16 day of March, 1990.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required by Rule 7052, Rules of Bankruptcy.

**In re Jo Carleen PORTER, Debtor.**

**Bankruptcy No. 89–20650–C.**

United States Bankruptcy Court,
W.D. Missouri, C.D.

April 10, 1990.

Kenneth O. McCutcheon, Jr., Versailles, Mo., for debtor.

Michael L. McDorman, Versailles, Mo., for Roy Blackburn.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

The general issue before this Court is whether a judgment rendered against the

debtor in favor of her ex-husband is a judicial lien of the type that can, and should, be avoided under 11 U.S.C. § 522(f).

The debtor herein, Jo Carleen Porter, filed a voluntary petition for relief under Chapter 7, 11 U.S.C. on November 8, 1989. On January 16, 1990 Ms. Porter filed a "Motion to Avoid Judicial Lien." She alleges that a judicial lien was created in favor of Roy Gene Blackburn, her ex-husband, by virtue of a judgment during the judicial dissolution of their marriage. Supposedly, this "judgment lien" attaches to certain real estate owned by Ms. Porter in Morgan County, Missouri.[1] She claims her ex-husband's judicial lien impairs her homestead exemption and should, therefore, be avoided.

Mr. Blackburn challenges his ex-wife's claims. In response to the above assertions, he specifically disputes Ms. Porter's claim that she is the sole owner of the above mentioned real estate. He further denies that he has a judgment lien against the property. Mr. Blackburn contends that the divorce decree left him with an "equitable interest" in the property, an interest which is not a voidable judicial lien within the meaning of § 522(f).

A hearing on the matter was held on February 14, 1990. Evidence was presented and arguments were heard at that time. The following represents this Court's Findings of Fact and Conclusions of Law regarding the controversy here in question.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Bankruptcy Code allows a debtor, in some situations, to avoid a judicial lien. In part, § 522(f)(1) provides the following:

1. The land is described as

A tract of land lying in the Northwest Quarter of the Southwest Quarter of Section 35, Township 42 North, Range 18 West, in Morgan County, Missouri, described by metes and bounds as follows: Beginning at the point of intersection of the East right-of-way line of Missouri State Highway Route MM with the North line of said Northwest Quarter of the Southwest Quarter, thence South 89 degrees 36″ East along the North line of said North-

west Quarter of the Southwest Quarter 89.02 feet to the Northeast corner thereof, thence South 0 degrees 16″ East along the East line of said Northwest Quarter of the Southwest Quarter 899.9 feet, thence leaving said East line and run North 83 degrees 38″ West 185.2 feet, more or less, to said East right-of-way line of Route MM, thence along said East right-of-way line in a Northerly direction to the point of beginning.

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such a lien is—

(1) a judicial lien ...