# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1246

_____

In re James Kujawa, individually and  *
doing business as Restaurant Builders, *
           *
    Debtor       *
           *
--------------------------  *
           * On Appeal from the United
Richard E. Schwartz,    * States Bankruptcy Appellate
           * Panel of the Eighth Circuit.
    Appellant,    *
           *
   v.        *
           *
James Kujawa,      *
           *
    Appellee.    *

_____

Submitted: September 12, 2001
Filed: November 2, 2001

_____

Before LOKEN, RICHARD S. ARNOLD, and FAGG, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

Richard E. Schwartz appeals a Bankruptcy Appellate Panel decision affirming orders of the Bankruptcy Court directing him to pay attorney's fees of $78,409.83 and an additional punitive monetary sanction of $100,000. We reduce the fee award to

$66,656.33. We reverse the monetary sanction. The record contains no support for an imposition so large. The remaining fee award is entirely sufficient to compensate the injured party and deter future misconduct.

I.

The fee award and monetary sanction stem from the filing of an involuntary bankruptcy petition against James Kujawa in December 1989. Before the petition was filed, Mr. Kujawa and his construction company were involved in business relationships with Mr. Schwartz, the appellant in this case and former counsel to Mr. Kujawa, and Paul Ebeling. The souring of these relationships and the protracted litigation over the bankruptcy petition resulted eleven years later in the award of attorneys' fees and a monetary sanction that are now before us for review.

In 1988, Mr. Kujawa was hired by Paul Ebeling to do construction work on the building where Mr. Schwartz shared office space with Mr. Ebeling. Mr. Ebeling owned interests in and managed two companies, Billboard Café and Tridon Corp., which were housed in this same office building. Mr. Schwartz was legal counsel to these companies and had a financial interest in them. During the time he worked on the building, Mr. Kujawa retained Mr. Schwartz as counsel in several matters. In the course of this representation, Mr. Schwartz gained financial information about Mr. Kujawa and counseled him on the advisability of filing bankruptcy.

In 1989, disputes arose among the three men. In May 1989, Mr. Kujawa stopped work on the construction projects. In September 1989, Mr. Schwartz withdrew as counsel to Mr. Kujawa. On December 4, 1989, an involuntary bankruptcy petition was filed against Mr. Kujawa. Five creditors filed the bankruptcy petition, alleging due and undisputed debts arising from Mr. Kujawa's construction business. The petition was signed by Sidney Gould, an attorney who had an office in the same building as Mr. Schwartz and Mr. Ebeling. Mr. Schwartz was not an

-2-

initial party to the bankruptcy, and his exact role in the filing is disputed by the parties. It appears, however, that Mr. Schwartz helped to identify creditors, provided some details about Mr. Kujawa's financial dealings, and may have assisted, either personally or through his legal associate, Mr. Parrot, in preparing the petition.

In answering the petition, Mr. Kujawa alleged that the bankruptcy filing was in bad faith and that his former attorney, Mr. Schwartz, and Mr. Ebeling had organized the creditors to file. Mr. Kujawa stated that the petition's allegations that his wife and daughter were conspiring with him to hide assets were made to embarrass him, and that the bankruptcy's sole purpose was to discredit his business.

A flurry of motions by Mr. Kujawa and his creditors followed. In January 1990, Mr. Kujawa filed a mechanic's lien in a state court against Tridon Corp. and Billboard Café to recover money allegedly owed to him from construction work for Mr. Ebeling. In February 1990, Mr. Schwartz filed a motion as counsel for Tridon Corp. and Billboard Café to intervene as creditors in the bankruptcy. Finding these claims subject to "numerous factual disputes," the Bankruptcy Court denied intervention. In re Kujawa, 112 B.R. 968, 971 (Bankr. E.D. Mo. 1990). At that time, the Court granted Mr. Kujawa's motion to disqualify Mr. Schwartz as counsel in the involuntary bankruptcy, finding that Mr. Schwartz had gained information from his representation of Mr. Kujawa that was "substantially related to the adverse claims asserted on behalf of Tridon and Billboard." Id. at 972. The Court did permit Mr. Schwartz to participate in the bankruptcy to pursue his own claim against Mr. Kujawa for unpaid legal fees. Mr. Schwartz appealed these decisions, which the District Court affirmed in 1991. In re Kujawa, No. 90-869C(2), slip op. at 8-9 (E.D. Mo., July 15, 1991.)

The involuntary petition was litigated only intermittently after this, and the case sat totally idle for over three years from 1994 to 1997. In this intervening period, the Supreme Court of Missouri undertook an investigation of the propriety of Mr.

Schwartz's conduct, at least partially in response to a complaint filed by Mr. Kujawa and his counsel. On June 23, 1995, the Court's appointed master, Supreme Court of Missouri Senior Judge Charles B. Blackmar, issued his report on Mr. Schwartz's conduct. Judge Blackmar found that Mr. Schwartz had violated the Missouri Rules of Professional Conduct by revealing information about Mr. Kujawa's wife and daughter that he had gained in the course of representing Mr. Kujawa. He also determined that Mr. Schwartz behaved improperly in assisting in the drafting of the involuntary petition. He recommended that Mr. Schwartz be reprimanded, stating that he found harsher discipline unnecessary because Mr. Schwartz had practiced since 1989 without further misconduct. The Missouri Supreme Court adopted this recommendation and formally reprimanded Mr. Schwartz.

In 1997, the Bankruptcy Court dismissed the petition pursuant to 11 U.S.C. § 305(a), a provision authorizing bankruptcy courts to abstain from jurisdiction when so doing better serves the interests of creditors and the debtor. The Court noted that although the creditors had met the statutory requirements for an involuntary bankruptcy, this case was "primarily a squabble between Richard E. Schwartz and his former client James Kujawa" and could be resolved more appropriately in a state court. In re Kujawa, No. 89-45120-293, slip op. at 16 (Bankr. E.D. Mo., Oct. 13, 1997). The Court retained limited jurisdiction to resolve the issue of costs, attorneys' fees, actual and punitive damages, and sanctions. Mr. Schwartz and the petitioning creditors appealed this decision to the District Court, which affirmed the abstention. In so doing, the District Court stated that it was "shocked by the conduct" of Mr. Schwartz and remanded to the bankruptcy court for a determination as to an appropriate award of sanctions. In re Kujawa, 224 B.R. 104, 108 (E.D. Mo. 1998).

On June 2, 2000, the Bankruptcy Court held a hearing on fees, damages, and sanctions and ordered Mr. Schwartz to pay Mr. Kujawa $78,409.83 in attorneys' fees. At that time, the Court also directed Mr. Schwartz to provide additional financial information to be used in shaping a monetary sanction. Mr. Schwartz had previously

-4-

filed a financial statement with the Court, but this information was only partially complete. Mr. Schwartz responded by arguing that because he had not pleaded inability to pay as an affirmative defense, the Court could not require him to submit financial information. On August 14, 2000, the Bankruptcy Court withdrew its order for additional financial information and ordered Mr. Schwartz to pay a monetary sanction of $100,000. On December 21, 2000, the Bankruptcy Appellate Panel for the Eighth Circuit affirmed both the award of fees and the monetary sanction. In re Kujawa, 256 B.R. 598, 618 (8th Cir. B.A.P. 2000).

II.

We review decisions to impose attorneys' fees and monetary sanctions under the abuse-of-discretion standard. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990); Grunewaldt v. Mut. Life Ins. Co. (In re Coones Ranch), 7 F.3d 740, 743 (8th Cir. 1993).[1] The Bankruptcy Court recited three bases for its authority to award Mr. Kujawa attorneys' fees: Federal Rule of Bankruptcy Procedure 9011, 11 U.S.C. § 105, and its inherent authority. In ordering the monetary sanction, the Bankruptcy Court relied solely on Rule 9011 (similar to Federal Rule of Civil Procedure 11). On review, the Bankruptcy Appellate Panel held that Rule 9011 and inherent authority were alternative, and equally suitable, bases for both the fee award and the monetary sanction. Regardless of whether the legal authority for imposing these sanctions is Rule 9011 or inherent authority, we believe abuse of discretion is the correct standard. In re Clark, 223 F.3d 859, 862 (8th Cir. 2000) (applying abuse-of-discretion standard to review sanctions awarded under Rule 9011, section 105(a), and

---

[1]Mr. Schwartz argues that the Supreme Court's decision in Cooper Industries, Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424 (2001), instituting de novo review of the constitutionality of punitive damages, requires that fee awards and sanctions be reviewed de novo. Because we would reach an identical result under either standard, we find it unnecessary to decide whether the analysis in Cooper Industries should apply to fee awards and monetary sanctions.

court's inherent authority); <u>Blue v. U.S. Dept. of Army</u>, 914 F.2d 525, 539 (4th Cir. 1990), <u>cert. denied</u>, 499 U.S. 959 (1991) (finding abuse-of-discretion review proper where sanctions imposed pursuant to four theories).

III.

Mr. Schwartz urges this Court to find that almost every element of the fee award was excessive and should not have been allowed. We have carefully reviewed the fee report of Mr. Kujawa's attorneys and each of Mr. Schwartz's arguments. As a general matter, we agree with the Bankruptcy Court that attorneys' fees were an appropriate sanction in this case, and that most of the fees awarded were properly allowed as being the direct result of Mr. Schwartz's unethical behavior. However, our review did reveal three instances of work for which it is unreasonable to order Mr. Schwartz to pay.

First, we find that it was an abuse of discretion to award fees billed by counsel for time spent speaking with the press. Mr. Kujawa's counsel charged $750 in fees for four hours of conversations with the St. Louis Post-Dispatch. Apparently, these interviews were given for an article that was published on January 29, 1990, about the mechanic's lien Mr. Kujawa had filed against the building where Mr. Schwartz had his office. To order Mr. Schwartz to foot the bill for such conversations, which were not necessary to a sound legal defense of the involuntary bankruptcy petition, is not reasonable, and these charges of $750 are hereby deleted from the fee award.

Second, the billing record shows $4,293.75 of allowed fees for Mr. Kujawa's resistance to the August 1990 motion of a creditor to lift the automatic stay. If Mr. Kujawa's harm results from being put in bankruptcy, it is incongruous to make Mr. Schwartz pay for Mr. Kujawa's efforts to use the bankruptcy to benefit and protect himself. These are not charges directly related to Mr. Schwartz's misconduct; in fact,

-6-

Mr. Kujawa, in all likelihood, would have had to litigate the mechanic's lien in state court immediately had bankruptcy not offered him temporary protection. We also note that the creditor seeking to lift the stay, St. Peters Supply Co., apparently was not connected with Mr. Schwartz or any impropriety in this case. Therefore, these charges of $4,293.75 are disallowed.

Third, we find that the fees pertaining to the 1997-98 appeal of the Bankruptcy Court's abstention decision should not have been awarded. Although Mr. Schwartz initiated that appeal, the petitioning creditors joined him immediately. Because of this, the legal work expended in defending the appeal likely would have occurred even without Mr. Schwartz's appeal. It is unreasonable to hold Mr. Schwartz solely responsible for fees from an appeal joined by other parties.

We also note that this appeal occurred almost a decade after the initial filing of the involuntary petition. Here, the Supreme Court's reasoning in Cooter & Gell is instructive.

> In this case, respondents argue, they would have incurred none of their appellate expenses had petitioner's lawsuit not been filed. This line of reasoning would lead to the conclusion that expenses incurred "because of" a baseless filing extend indefinitely. Such an interpretation of [Rule 11] is overbroad. We believe Rule 11 is more sensibly understood as permitting an award only of those expenses directly caused by the filing, logically, those at the trial level.

Cooter, 496 U.S. at 406 (citation omitted). While Mr. Schwartz's misconduct was the "but for" cause of everything that followed, it was the Bankruptcy Court's decision to abstain under 11 U.S.C. § 305 that directly caused the appeal of that decision. While we agree abstention was appropriate here, earlier in this litigation Mr. Kujawa had stipulated that the criteria for an involuntary petition were satisfied, making an argument that abstention was incorrect not frivolous on its face. We also observe that

the District Court that heard the appeal, while expressing disapproval of Mr. Schwartz's unethical behavior, did not specifically find the appeal "frivolous" or exercise its power under Federal Rule of Bankruptcy Procedure 8020, authorizing the award of damages and costs for frivolous appeals. For these reasons, we reduce the fee award by $6,709.75 to delete fees relating to the 1997-98 appeal.[2]

Accordingly, we affirm the award of attorneys' fees, but reduce the $78,409.83 amount to reflect the deletion of the fees from conversations with the press, the fees from Mr. Kujawa's opposition to the motion to lift the stay, and the 1997-98 appeal fees. We affirm the order to pay the remaining $66,656.33 in attorneys' fees.

IV.

The Bankruptcy Court imposed a $100,000 monetary sanction on Mr. Schwartz. The Court stated that "[i]n assessing this sanction, the Court has considered that the legal profession is usually a financially rewarding profession and that Mr. Schwartz is a lawyer with considerable experience who continues to practice law." In re Kujawa, No. 89-45120-293, slip op. at 7 (Bankr. E.D. Mo., Aug. 14, 2000). This rationale for the amount of a sanction could equally justify almost any other monetary figure the Court had selected. We acknowledge that Mr. Schwartz's

---

[2]Relying on Cooter & Gell, Mr. Schwartz urges us to hold that the Bankruptcy Court lacked authority under Rule 9011 to award any fees from appellate proceedings. Because the Bankruptcy Court specifically listed inherent authority and 11 U.S.C. § 105 as among its sanctioning powers applicable to Mr. Schwartz's behavior, we do not address this argument or any other arguments raised by the parties that pertain solely to one of the powers. We recommend, however, that, because the procedural requirements, goals, and scope of the various sanctioning authorities may differ, trial courts identify the power under which they impose sanctions when possible. Cf. Hutchinson v. Pfeil, 208 F.3d 1180, 1186-87 (10th Cir. 2000) (declining to affirm procedurally defective Rule 11 order by relying on inherent authority and warning of danger of confounding powers).

unwillingness to provide the Court with detailed financial information made a close tailoring of the monetary sanction difficult, if not impossible. The cornerstone of imposing a monetary sanction, however, should be the selection of an amount no greater than sufficient to deter future misconduct by the party. Indeed, Rule 9011 explicitly states that "[a] sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Federal Rule of Bankruptcy Procedure 9011(c)(2). While awarding an amount of sufficient size to capture the attention of the misbehaving party may be part of effective deterrence, we believe the $100,000 sanction was an abuse of discretion. The amount is not related concretely to redressing the harm of Mr. Schwartz's misconduct and is not supported by the facts as being necessary to deter Mr. Schwartz in the future.

Eleven years have passed since Mr. Schwartz's ethical breach in his dealings with Mr. Kujawa. There is no evidence suggesting that Mr. Schwartz has committed any further ethical violations or filed any other involuntary bankruptcy petitions since 1989. The fact that Mr. Schwartz has not engaged in misconduct in over a decade strongly suggests that the Missouri Supreme Court's investigation and public reprimand of him were sufficient to deter him from repeating his mistakes and to educate him about his misbehavior. Further, we find that the awarding of attorneys' fees is sufficient to redress Mr. Schwartz's actions toward Mr. Kujawa. The amount of fees, even as reduced by this Court, remains substantial. This is especially so considering that Mr. Kujawa often spent months litigating issues or claims that he subsequently stipulated to or dropped, and that he did not seek any resolution of this case for several years. In light of these facts, we are left with the firm impression that attorneys' fees are sufficient to rectify and deter Mr. Schwartz's misconduct, and that the additional monetary sanction was an abuse of discretion.

For the foregoing reasons, we reverse the $100,000 monetary sanction levied against Mr. Schwartz.  As detailed above, Mr. Schwartz will have to pay $66,656.33 in attorneys' fees because of his improper behavior in instigating this litigation.

The judgment of the Bankruptcy Appellate Panel is affirmed in part and reversed in part, and this case is remanded to the Panel for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.