# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

00-6067 EM
00-6100 EM

In re: James Kujawa, individually and    *
doing business as Restaurant Builders,    *

       *

     Debtor.    *

       *

Richard E. Schwartz,    *

       *    Appeal from the

     Appellant,    *    United States Bankruptcy Court

       *    for the Eastern District of Missouri

       v.    *

       *

James Kujawa,    *

       *

     Debtor - Appellee    *

Submitted: November 8, 2000
Filed: December 21, 2000

Before, KOGER, Chief Judge, KRESSEL and DREHER, Bankruptcy Judges

KOGER, Chief Judge

     Attorney Richard E. Schwartz appeals from two Orders of the bankruptcy court,[1] entered June 2, 2000, and August 14, 2000, ordering him to pay certain attorney fees incurred in connection with the involuntary bankruptcy petition filed against James Kujawa and an additional sanction in the amount of $100,000. For the reasons that follow, we affirm the Orders of the bankruptcy court.

     We have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(c).

---

[1] The Honorable David P. McDonald, United States Bankruptcy Judge for the Eastern District of Missouri.

FACTUAL BACKGROUND

This case arises out of an involuntary Chapter 7 bankruptcy petition filed over ten years ago against James Kujawa d/b/a Restaurant Builders, a building contracting company. (hereafter "Kujawa" or "Debtor"). The factual background in this case has been recounted in two published decisions, reported at In re Kujawa, 112 B.R. 968 (Bankr. E.D. Mo. 1990); and In re Kujawa, 224 B.R. 104 (E.D. Mo. 1998), as well as several unpublished decisions contained in the record on appeal, and we recite only those facts pertinent to these appeals.

To summarize, in January 1989, Kujawa and Paul A. Ebeling, together with their jointly owned entity, Billboard Café at Lucas Plaza, Inc., entered into an agreement to build, co-own and operate the Billboard Café. Kujawa had also contracted to build offices for Tridon Corporation, in which he and Ebeling were also co-shareholders along with Richard E. Schwartz, Esq. Schwartz had incorporated both Billboard Café and Tridon Corporation and served as general counsel to both companies. In addition, Richard Schwartz & Associates Ltd. served as Kujawa's attorneys as early as 1988. Schwartz personally represented Kujawa in at least five lawsuits in 1988 and 1989 and advised him on various other matters, including advising against Kujawa's suggestion in August 1989 that he was considering filing a voluntary bankruptcy petition. Throughout their attorney-client relationship, Schwartz had access to Kujawa's business and personal financial information and the two of them even shared offices and had adjoining desks. According to the Bankruptcy Court, the scope of the relationship between Schwartz and Kujawa could only be described as "pervasive." See In re Kujawa, 112 B.R. at 969-70.

Starting in May 1989, a dispute arose between Kujawa on the one hand and Ebeling and Schwartz on the other concerning the construction on both the Billboard Café and Tridon projects. These disputes culminated with the filing of an involuntary Chapter 7 petition against Kujawa in late 1989 and Kujawa's filing a mechanic's lien against Billboard and Tridon in January 1990. Essentially, Ebeling and Schwartz organized a group of Kujawa's trade creditors and encouraged them to file the involuntary petition. Schwartz referred the group to Sidney A. Gould, Esq., an attorney affiliated with Richard Schwartz & Associates, Ltd., who filed the involuntary petition on its behalf. In the face of Kujawa's request for sanctions based on the circumstances surrounding the filing of the involuntary petition, Gould withdrew from the case on January 12, 1990, and the petitioning creditors obtained other counsel.

Soon thereafter, two of the petitioning creditors filed a motion requesting the Bankruptcy Court to abstain under § 305(a)(1)[2] or to permit them to withdraw as petitioning creditors, suggesting that, under the circumstances, it would be in the best interest of the creditors and of the Debtor to permit them to proceed with their claims against the Debtor outside of bankruptcy. Although the Court denied this motion, the Court ultimately approved a settlement agreement between them and the Debtor and permitted them to withdraw on April 4, 1990. Another creditor was granted permission to intervene and join in the involuntary petition on March 7, 1990.

On February 21, 1990, Richard Schwartz & Associates Ltd. filed its Entry of Appearance on behalf of Billboard Café and Tridon Corporation and sought to intervene on their behalf as creditors. Richard Schwartz & Associates also sought to intervene on its own behalf, asserting a claim in the amount of $11,163.75 for unpaid legal services furnished to Kujawa prepetition.

On April 4, 1990, the Bankruptcy Court entered an Order and Memorandum Opinion denying the motion by Billboard and Tridon to join or intervene in the involuntary case. See In re Kujawa, 112 B.R. at 970-72. The Court also granted Kujawa's motion to disqualify Richard Schwartz & Associates as counsel from this case. Id. at 972-73. Schwartz was, therefore, permitted to participate in the case only to the extent necessary to pursue his own claim for attorney fees. In addition, noting that Schwartz should have been apprised of the unethical nature of his attempt to intervene on behalf of the other creditors because he had been disqualified in two similar previous involuntary cases against his former clients, the Bankruptcy Court directed Kujawa to file a schedule of costs and attorneys' fees incurred in connection with, but solely limited to, his motion to disqualify counsel. Schwartz was given five days thereafter to object to the requested fees and was advised that if no such objection was filed by him, the Court would approve the fees. Id. at 973. Kujawa submitted his schedule of fees and Schwartz objected thereto. Schwartz also appealed the April 1990 Order to the District Court, who dismissed the appeals, without prejudice, as being premature on July 15, 1991.

Meanwhile, while that appeal to the District Court was pending, the Bankruptcy Court held final hearings on April 11, 12, and 13, 1990, on the involuntary petition and Kujawa's motion to dismiss, to

---

[2] Hereafter, unless otherwise noted, all statutory references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101- 1330 (1994).

require a bond, to award attorneys' fees and costs, for actual and punitive damages, and for sanctions. See In re Kujawa, 224 B.R. at 106. At these hearings, the Bankruptcy Court concluded that the petitioning creditors had met their burden under § 303 as to the appropriate number of petitioning creditors and the dollar amounts needed and further concluded that Kujawa was not generally paying his debts as they came due. Id. However, the Bankruptcy Court did not make a final determination on these issues because at that time, the appeal of the April 4 Order had not yet been decided by the District Court.

Subsequently, very little occurred in the case until 1997[3] when, at the behest of the state court judge who had stayed Kujawa's mechanic's lien proceedings against Billboard and Tridon until the bankruptcy proceedings could be resolved, the Bankruptcy Court entered a final Order dated October 13, 1997, abstaining and dismissing the involuntary petition pursuant to § 305(a)(1) and (c) and directing the parties to proceed with the mechanic's lien suit in state court. Id. at 106-07. In that Order, the Bankruptcy Court retained limited jurisdiction to resolve any request for the award of costs, attorneys' fees, actual and punitive damages and for sanctions. On appeal, the District Court affirmed the Bankruptcy Court's Order abstaining and dismissing the case, and specifically concluded that the Bankruptcy Court did not err in retaining limited jurisdiction to resolve the fees, damages, and sanction issues. Id. at 108. The District Court held:

> Regardless of whether a dismissal pursuant to Section 305(a) strips the bankruptcy court of its authority to impose the remedies set forth in 11 U.S.C. § 303(i), . . . the bankruptcy court always has the inherent power to impose civil sanctions on the parties who appear before it. . . . . The bankruptcy court, therefore, is free to impose monetary sanctions in the form of costs, attorneys' fees or actual or punitive damages for abuse of its procedures.

Id. (citations and footnote omitted) In addition, although the District Court declined the Debtor's request to impose sanctions itself,[4] the District Court specifically remanded the matter back to the Bankruptcy Court for a determination as to an appropriate award of sanctions, notably commenting:

> This Court is shocked by the conduct or, rather, misconduct of attorney Richard E. Schwartz. Without a doubt this unethical and unprofessional behavior warrants the imposition of monetary sanctions. As the bankruptcy court is in the best position to

---

[3] Although little activity occurred in the actual bankruptcy case during this period, the Missouri Supreme Court publicly reprimanded Schwartz in 1995 for his unethical conduct in filing involuntary bankruptcy cases against his former clients, including Kujawa.

[4] The District Court's denial of the request for attorneys' fees was made without prejudice.

[assess] what manner of sanctions is most appropriate, this Court believes that it should make that determination.

Id.

Following this directive by the District Court, the Bankruptcy Court issued an Order setting a hearing regarding the appropriate sanctions to be assessed against Schwartz. At that time, the Debtor sought an award of attorney fees and costs in the amount of $66,601.99 against Schwartz, the petitioning creditors, and James E. Parrot, Esq. (Schwartz's associate who represented Schwartz in attempting to intervene in the involuntary bankruptcy case); actual damages in the amount of $250,000 against Schwartz and Parrot; and $1 million in punitive damages against Schwartz and Parrot. Hearing on the issue of the damages was set for February 8, 2000. Meanwhile, the parties commenced discovery.

At a pre-trial hearing held on February 2, 2000, counsel for the Debtor advised the Court that Schwartz was refusing to provide him with a financial statement or answer any questions regarding his net worth in relation to the Debtor's punitive damage request and he requested that the Court compel Schwartz to answer questions regarding his net worth. Following some discussion as to this request and the serious concern expressed by Schwartz's attorney that the information would somehow be made public, the Bankruptcy Court ordered Schwartz to submit to the Court, in a sealed envelope, a financial statement similar to one used by banks in loan application situations and which itemized assets and liabilities and indicated a net worth. The Court said it would not open the envelope unless it decided to award punitive damages.

Also at the February 2 pre-trial hearing, Schwartz's attorney indicated that the Debtor had not responded to certain discovery requests, either. Particularly, Schwartz's attorney advised the Court that he was seeking certain financial information from the Debtor so that he could defend against the Debtor's actual damage claims for lost profits and pain and suffering, which were described as damaged credit ratings and humiliation based on the Debtor's financial situation. At this hearing, although counsel for the Debtor indicated that the Debtor was abandoning the claim for lost profits, the Court nevertheless directed the Debtor to comply with Schwartz's discovery requests because the claims for pain and suffering were based on his financial situation. Specifically, the Debtor was ordered to provide signed releases so that Schwartz could obtain the Debtor's income tax and social security information from the appropriate government authorities.

5

At the hearing conducted February 8, 2000, counsel for the Debtor announced that the Court's order directing the Debtor to comply with Schwartz's discovery requests had been emotionally troubling to the Debtor and that he was now withdrawing all of his actual damage claims, thus seeking only attorney fees, costs, and punitive damages. He requested that the Court reconsider the order requiring the Debtor to sign the releases as they were not relevant to the remaining claims. The Bankruptcy Court granted the Debtor's request over Schwartz's objection and the hearing on Schwartz's liability for attorney fees and punitive damages based on the bad faith filing proceeded as scheduled.

Also at that hearing, Schwartz turned over a sealed envelope containing a financial statement as directed by the Court at the February 2nd hearing. Again the Court indicated it would not look at the document unless it determined that it needed to, as previously agreed.

On June 2, 2000, the Bankruptcy Court entered its Order and Memorandum Opinion in which, among other things, the Court denied the sanction requests against attorneys Parrot and Carter and ordered minimal sanctions against two of the petitioning creditors. No one has appealed those portions of the June 2nd Order.

As to Schwartz, the Bankruptcy Court held that it could not award punitive damages against Schwartz under § 303(i) because the Court had abstained under § 305. However, the Bankruptcy Court concluded, based on the language contained in the District Court's decision in the previous appeal which remanded for assessment of sanctions, that it had the authority to award a sanction under its "inherent power to impose civil sanctions on the parties who appear before it," In re Kujawa, 224 B.R. at 108, and under Federal Rule of Bankruptcy Procedure 9011. On those bases, the Bankruptcy Court ordered Schwartz to pay nearly all of the Debtor's requested attorneys' fees, totaling $78,409.83, disallowing only a small portion of the fees because they had been incurred in filing the mechanic's lien rather than dealing with the bankruptcy itself.

In addition, in the June 2nd Order, the Bankruptcy Court specifically stated that it was retaining jurisdiction for the sole purpose of assessing a further sanction against Schwartz in an amount necessary to deter him from filing future bad faith involuntary petitions such as this one. The Court found that Schwartz's financial status may be a factor in determining the appropriate amount of additional sanctions the Court would assess and indicated it had therefore reviewed the financial statement that had been filed

under seal. The Court found, however, that the financial statement Schwartz had provided under seal was inadequate and inconsistent. In part, the Bankruptcy Court described the inadequate financial statement as follows:

> Notably, the financial statement is overwhelmingly left blank. For example, the spaces provided for such items as joint debts, joint assets, annual income, annual expenditures, contingent liabilities, U.S. Government & marketable securities, non-marketable securities, investments in real estate, life insurance carried, vested interest in deferred compensation/profit-sharing plans and loans owing banks, brokers, finance companies, and others, are all blank.

Because the Court determined the financial statement to be "woefully inadequate" and of little use in determining net worth, earning capacity, and the amount of monetary sanction that would deter Schwartz from engaging in future misconduct, the Court ordered Schwartz to produce his personal tax records and other detailed personal financial information, also under seal to be protected by the Court, for purposes of assessing an appropriate sanction. Schwartz appealed this Order ("the June 2nd Order").

On July 5, 2000, Schwartz filed a motion in the Bankruptcy Court requesting that the Court return the original financial statement. Among other things, Schwartz asserted that the Bankruptcy Court had no need for his personal financial information since Schwartz had never raised inability to pay sanctions as an affirmative defense and, citing case law authority, suggested such a defense had therefore been waived. He also filed a motion for stay pending appeal before us, which we denied on July 14, 2000, because he had not first applied for a stay from the Bankruptcy Court. On July 17, 2000, Schwartz filed a motion in the Bankruptcy Court to stay the June 2nd Order until after we ruled on his appeal, arguing particularly that he was likely to prevail on the portion of the Order requiring him to produce the detailed financial information.

On August 14, 2000, while the appeal from the June 2nd Order was pending and the parties were in the process of briefing their respective arguments in that appeal, instead of granting Schwartz's request for a stay pending appeal, the Bankruptcy Court entered an Order and Memorandum Opinion ("the August 14th Order") in which the Court withdrew the part of the June 2nd Order that required Schwartz to produce the detailed tax and financial information, and instead ordered Schwartz to pay $100,000 as an additional sanction under Rule 9011 so as to "deter him from future transgressions of the kind described in the Court's June 2, 2000 Memorandum Opinion." The Court also denied Schwartz's request for return of the original

7

financial statement, stating that it would reseal the document and preserve it in case it was needed as part of the record on appeal. Schwartz appealed the August 14th Order and the two appeals have been consolidated.

## DISCUSSION

On appeal, Schwartz asserts that the Bankruptcy Court erred in both its award of attorneys' fees (in the June 2nd Order) and the additional $100,000 sanction (in the August 14th Order). He also asserts that the Bankruptcy Court should be required to return to him the financial document that he had filed under seal.

### Standard of Review

We review the Bankruptcy Court's award of sanctions for abuse of discretion. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 110 S. Ct. 2447, 110 L.Ed.2d 359 (1990); Grunewaldt v. Mut. Life Ins. Co. (In re Coones Ranch, Inc.), 7 F.3d 740, 743 (8th Cir. 1993); Ebersold v. DeLaughter (In re DeLaughter), 213 B.R. 839, 841 (B.A.P. 8th Cir. 1997). "Thus, we should reverse the award only if we conclude that it was based on 'an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" In re DeLaughter, 213 B.R. at 841 (quoting Cooter & Gell, 496 U.S. at 405, 110 S.Ct. at 2461). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed.746 (1948); accord In re Waugh, 95 F.3d 706, 711 (8th Cir. 1996); Chamberlain v. Kula (In re Kula), 213 B.R. 729, 735 (B.A.P. 8th Cir. 1997). "If the bankruptcy court's account of the evidence is plausible in light of the entire record viewed, it must be upheld even though we may have weighed the evidence differently had we been sitting as the trier of fact." Forbes v. Forbes (In re Forbes), 215 B.R. 183, 187 (B.A.P. 8th Cir. 1997) (citing Anderson, 470 U.S. at 573-74, 105 S.Ct. at 1511). When there are two permissible views of the evidence, the BAP may not hold that the choice made by the trier of fact was clearly erroneous. In re Lemaire, 898 F.2d 1346, 1349 (8th Cir. 1990).

8

<u>The Award of Attorneys' Fees</u>

Schwartz raises several arguments asserting that the award of attorneys' fees in the June 2nd Order was improper and excessive.[5]   We first address Schwartz's assertion that the Debtor's unclean hands should have precluded what Schwartz refers to as a "windfall monetary award" to the Debtor in the form of the award of attorneys' fees.  Schwartz points to three items as evidence of the Debtor's unclean hands: (1) the Debtor's protracted defense to the involuntary bankruptcy case filed against him, for which all the Code elements were present; (2) the fact that the Debtor ultimately dropped all of his actual damage claims against Schwartz; and (3) alleged misrepresentations by the Debtor to his own attorneys regarding his ability to pay his attorneys' fees.  We find each of these suggestions to be without merit.

First, despite the presence of the technical elements for filing an involuntary bankruptcy proceeding against the Debtor (i.e., that the Debtor had no bona fide dispute to the petitioning creditors' claims and that there were a sufficient number of petitioning creditors with claims in an appropriate dollar amount, <u>see</u> 11 U.S.C. § 303(b)(1)), both the Bankruptcy Court and the District Court have clearly found that the involuntary bankruptcy petition filed against the Debtor in this case was improper from its inception and undoubtedly constituted unethical conduct on Schwartz's part.  We wholeheartedly disagree with Schwartz's characterization of the Debtor's attempts to defend against the improper involuntary petition as inappropriate or even questionable under the circumstances of this case, particularly since the evidence supports the inference that Schwartz and Ebeling put the Debtor into a position where he technically fit the Code requirements for an involuntary petition in the first place by failing to pay him on the Billboard Café and Tridon projects.

---

[5]  We agree with the Debtor that, based on the District Court's opinion remanding for assessment of sanctions, Schwartz is prohibited under the law of the case doctrine from now contesting the Bankruptcy Court's ability to impose sanctions as such.  <u>See</u> <u>South Center Enters., Inc. v. Farrington</u>, 829 F.2d 651, 655 (8th Cir. 1987) (the law of the case doctrine requires that a decision on a former appeal be followed in any subsequent proceedings in that court or a lower court unless evidence subsequently introduced is substantially different).  In other words, we agree that Schwartz cannot now argue that he is not liable for some form of sanctions.  However, the District Court did not decide the form or amount of the appropriate sanctions to be imposed.  As a result, to the extent Schwartz contends that his conduct was not sanctionable or that the District Court did not decide that issue, we find those arguments to be without merit.  We decide only the appropriateness of the manner and amount of sanctions actually imposed.

Second, we reject Schwartz's assertion that the Debtor has unclean hands because he ultimately dropped all of his actual damage claims or that he is not entitled to the fees generated in his attempts to pursue actual damages. The Bankruptcy Court specifically found that the Debtor's abandoning his actual damage claims in the face of further litigation did not mean that the claims were without merit or that the work was unnecessary and the record supports this determination. The Bankruptcy Court's conclusion on this point is supported by the record and was not clearly erroneous.

Third, the record does not support Schwartz's allegation that the Debtor made misrepresentations to his own attorneys regarding his ability to pay his attorneys' fees. Even assuming the Debtor made an annual salary of $60,000 to $70,000 in some of the years after the involuntary petition was filed and that he received a $52,000 severance package from another company during the last ten years, this does not compel the conclusion that he was able to pay his attorneys' fees or that he made misrepresentations to his attorneys regarding his ability to pay them. Furthermore, and more importantly, the Debtor's ability or inability to pay his attorneys' fees, as well as his attorneys' expectation as to how they would be paid, is irrelevant in considering Schwartz's liability as a sanction therefor. See In re Stine, 254 B.R. 244, 252 (B.A.P. 9th Cir. 2000) (holding that the mere fact that the debtor had obtained pro bono representation and would not have to pay for her attorney's services did not make an award of attorney fees unjust in § 523(d) context).

In sum, we reject outright Schwartz's arguments that the Bankruptcy Court erred in its award of attorneys' fees because of any allegations of unclean hands on the part of the Debtor.

Schwartz next argues that the fee award was unjustified and unreasonable under Rule 9011. As Schwartz suggests, the United States Supreme Court has said that Rule 11[6] is not intended to be a fee shifting statute; that the purpose of Rule 9011 sanctions is to deter rather than to compensate; and that the sanction should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons. See Cooter & Gell v. Hartmarx, 496 U.S. at 409, 110 S. Ct. at 2462, Advisory Committee Notes to Fed. R. Civ. P. 11; Divane v. Krull

---

[6] Cases interpreting Fed. R. Civ. P. 11 apply to Fed. R. Bankr. P. 9011 determinations. See In re Coones Ranch, 7 F.3d 740. For purposes of simplicity, we sometimes refer to these two rules interchangeably.

Elec. Co., 200 F.3d 1020, 1030 (7th Cir. 1999). Schwartz also correctly asserts that a fee award under Rule 9011 must be reasonable and that generally attorney fees incurred in pursuing an appeal are not recoverable under Rule 9011 unless the appellate court determines that the appeal was frivolous. See Cooter & Gell v. Hartmarx, 496 U.S. at 406-07, 110 S. Ct. at 2461-62.

We disagree, however, that these principles mandate a reversal of the June 2nd Order in this case. For the reasons set forth below, we believe the award of attorneys' fees was proper under Rule 9011. Nevertheless, a detailed discussion of the issue of whether the attorney fee award was appropriate under Rule 9011 is not necessary here because the award can be affirmed under the Bankruptcy Court's alternate basis for awarding the fees, namely, the Court's inherent authority to make the award.

In its June 2nd Order, after discussing the various theories under which bankruptcy courts can award sanctions, the Bankruptcy Court found that it could order sanctions in this case either under Rule 9011 or under its inherent power to do so. However, the Bankruptcy Court did not specify under which of these two theories it was making the June 2nd award of attorneys' fees. In any event, considering that the Bankruptcy Court was sanctioning Schwartz for conduct beyond the signing of pleadings in violation of Rule 9011(b), and considering that the Bankruptcy Court's analysis for attorney fee sanctions began with the District Court's remand for an award of sanctions expressly based on the Bankruptcy Court's inherent authority, and further considering the exceptional facts and circumstances of this case, we find the inherent power to sanction to be particularly applicable here.

In Chambers v. NASCO, Inc., 501 U.S. 32, 111 S. Ct. 2123, 115 L.Ed.2d 27 (1991), the Supreme Court endorsed the federal courts' inherent authority to impose sanctions, including awards of attorneys' fees, against the attorneys who appear before them. Id. 501 U.S. at 45, 111 S. Ct. at 2133; see also Greiner v. City of Champlin, 152 F.3d 787, 789-90 (8th Cir. 1998) (recognizing the court's inherent power to assess attorneys' fees as a sanction). This ability extends to the bankruptcy courts as well. See Glatter v. Mroz (In re Mroz), 65 F.3d 1567 (11th Cir. 1995); In re Clark, 223 F.3d 859, 864 (8th Cir. 2000) (bankruptcy court has inherent authority to impose civil sanctions for abuses of the bankruptcy process; section 105 gives bankruptcy courts the broad power to implement the provisions of the bankruptcy code and to prevent an abuse of the bankruptcy process, which includes the power to sanction counsel); Franchise Tax Board v. Lapin (In re Lapin), 226 B.R. 637, 641 (B.A.P. 9th Cir. 1998) (bankruptcy court has inherent power to impose sanctions, even against non-parties). Although the

11

Supreme Court warned that "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion," the Supreme Court unambiguously held that "a court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Chambers, 501 U.S. at 44-46, 111 S. Ct. at 2132-33 (citations omitted).

Furthermore, the Supreme Court held that the inherent power can be invoked despite the existence of procedural rules which sanction the same conduct and that such rules, such as Rule 11, are not substitutes for the inherent power. Id. 501 U.S. at 46, 49, 111 S. Ct. at 2133, 2135; accord In re Mroz, 65 F.3d at 1575. As the Eleventh Circuit interpreted Chambers in the bankruptcy context:

> The inherent power to sanction is both broader and narrower than these other means of imposing sanctions: "[W]hereas each of the other mechanisms reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses." [Chambers, 501 U.S. at 46, 111 S. Ct. at 2133.] Therefore, although certain conduct may or may not be violative of Rule 11 or Bankruptcy Rule 9011, it does not necessarily mean that a party will escape sanctions under the court's inherent power.

In re Mroz, 65 F.3d at 1575 (additional citations omitted).

Consequently, although Schwartz raises several arguments as to why the Court's award of attorneys' fees was erroneous under Rule 9011, we need not decide those issues here because the Bankruptcy Court in this case had the inherent authority to sanction Schwartz for his improper conduct in connection with the bankruptcy proceedings filed against Kujawa.

> [W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.

Chambers, 501 U.S. at 50, 111 S. Ct. at 2136. Thus, regardless of whether Schwartz is correct that the attorneys' fees could not have been properly awarded under Rule 9011, the Bankruptcy Court could, according to the Supreme Court, safely rely on its inherent power to award the attorneys' fees under the circumstances of this case.

That being the case, the invocation of the Bankruptcy Court's inherent power required a finding that by instigating and pursuing the involuntary bankruptcy petition against Kujawa, Schwartz "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers, 501 U.S. at 44-46, 111 S. Ct. at 2132-33; accord In re Mroz, 65 F.3d at 1575; but see Harlan v. Lewis, 982 F.2d 1255, 1260 (8th Cir. 1993) (finding that the Supreme Court did not intend the "bad faith" requirement to limit the application of monetary sanctions under the inherent power; the district court had inherent power to impose sanctions without explicit finding of bad faith).

In any event, both the Bankruptcy Court and the District Court have made the required finding that Schwartz acted in bad faith, vexatiously, wantonly or for oppressive reasons. The language used by the District Court in its remand for sanctions leaves no doubt that the issue of bad faith, as well as the issue of sanctionability pursuant to the Court's inherent power, has already been decided, see In re Kujawa, 224 B.R. at 108, and is therefore the law of the case.[7]

Furthermore, "[a] court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining the requisite bad faith exists and in assessing fees." Id. 501 U.S. at 50, 111 S. Ct. at 2136 (citation omitted).

> Due process requires that the attorney (or party) be given fair notice that his conduct may warrant sanctions and the reasons why. Donaldson v. Clark, 819 F.2d 1551, 1559-60 (11th Cir. 1987) (discussing Rule 11 sanctions). Notice can come from the party seeking sanctions, from the court, or both. Id. at 1560. In addition, the accused must be given an opportunity to respond, orally or in writing, to the invocation of such sanctions and to justify his actions.

In re Mroz, 65 F.3d at 1575-76. As to the issue of Schwartz's bad faith in pursuing this case, besides the fact that this issue has been decided by the District Court and Schwartz did not appeal that decision on due process or any other ground, we conclude that he received due process on that issue in any event. As the Bankruptcy Court found, Schwartz had been disqualified in other previous similar cases before the Bankruptcy Court for the Eastern District of Missouri and so he should have been fully apprised of the

---

[7] Even if the issues of bad faith and sanctionability were not barred by the law of the case doctrine under the District Court's ruling, we note for what it is worth that the record amply supports a finding that Schwartz acted in bad faith in pursuing this case.

ethical standards governing the practice of law before the Bankruptcy Court. See In re Kujawa, 112 B.R. at 973. But even if he was somehow unaware of the inappropriateness of his actions before he orchestrated the filing of the bankruptcy petition against Kujawa, he was certainly notified through Kujawa's answer thereto and Kujawa's repeated motions for sanctions. Consequently, there can be no question that Schwartz had fair notice that his actions in pursuing this case could warrant sanctions and he had ample opportunity to respond or otherwise change the course of action so as to prevent sanctions being imposed against him.

Furthermore, as to the actual sanctions imposed, not only did the motions filed by the Debtor specifically request attorneys' fees and punitive damages, thereby providing Schwartz with notice, the District Court expressly remanded for an award of monetary sanctions, specifically and notably suggesting that attorneys' fees and punitive damages may be warranted. The parties then engaged in extensive discovery pertaining to the request for attorneys's fees and punitive damages and the Bankruptcy Court conducted a full evidentiary hearing solely on the issue of sanctions. Thus, by the time the Court made its actual sanction award on June 2nd, not only had Schwartz been given repeated notice as to the possibility (or, rather, likelihood) of the imposition sanctions, he was given ample opportunity to respond to the invocation of the sanctions and he in fact did respond, both orally and in writing. Plainly, Schwartz received due process in the imposition of the attorneys' fees sanction under the standard expressed in Chambers. The cases cited by Schwartz for the proposition that he did not receive due process are all distinguishable on the facts.

> In sum, as the Chambers Court reasoned:
>
> The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of "vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy."

Id. 501 U.S. at 46, 111 S. Ct. at 2133 (citations omitted). We believe this is precisely what the Bankruptcy Court's award of attorneys' fees achieved in this case: it vindicated the Bankruptcy Court's authority without resort to the more drastic contempt finding and it made the Debtor whole by awarding him his legal expenses incurred due to Schwartz's misconduct.

Having found that the June 2nd award of attorneys' fees can be affirmed under the Court's inherent authority to impose sanctions, the holdings in Cooter & Gell v. Hartmarx, 496 U.S. at 406-07, 110 S. Ct. at 2461-62, limiting Rule 9011 awards do not apply here. That being the case, we conclude it was not error for the Bankruptcy Court to interpret the District Court's remand for imposition of monetary sanctions to include all the fees stemming from the improper bankruptcy filing, including those incurred in connection with the appeal to the District Court. Kujawa could not have been made whole without an award of the fees incurred on that appeal.

Finally, the Bankruptcy Court addressed the particular issues regarding the reasonableness of the attorneys' fees, including the alleged double billing for inter-office conferences, claims of overlawyering, and the like, in the June 2nd Order and we conclude that the Bankruptcy Court's findings on those issues were within its discretion. The June 2nd Order awarding attorneys' fees is therefore affirmed.

### The Additional Sanction in the Amount of $100,000

As mentioned above, in its August 14th Order, the Bankruptcy Court withdrew the portion of the June 2nd Order requiring Schwartz to produce detailed tax and financial information for purposes of assessing an additional sanction and instead assessed the additional sanction in the amount of $100,000 against Schwartz under Rule 9011 "sufficient to deter him from future transgressions of the kind described in the Court's June 2, 2000 Memorandum Opinion."

Although the Bankruptcy Court specifically made the additional sanction award under Rule 9011, we conclude that for the reasons discussed above pertaining to the attorneys' fees, the additional sanction can be affirmed under the under the Court's inherent authority to sanction the parties who appear before it. "[T]he rule is settled 'that if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason.'" In re Mroz, 65 F.3d at 1574 (quoting Brown v. Allen, 344 U.S. 443, 459, 73 S. Ct. 397, 408, 97 L.Ed. 469, 490 (1953)) (other citations omitted); accord Hobbs v. Evans, 924 F.2d 774, 777 (8th Cir. 1991) ("in the review of judicial proceedings the rule is settled that if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason") (citations omitted). While we do not believe Rule 9011 was a "wrong ground" on which to award the sanction, discussed below, we conclude that the inherent power to sanction was an equally applicable basis on which to order the sanction.

Again, the finding that Schwartz acted in bad faith, vexatiously, wantonly, or for oppressive reasons and that his conduct was sanctionable has already been made by both the Bankruptcy Court and the District Court and is therefore the law of the case. The District Court explicitly directed the Bankruptcy Court to enter monetary sanctions against Schwartz pursuant to its inherent authority to do so. And again, "although certain conduct may or may not be violative of Rule 11 or Bankruptcy Rule 9011, it does not necessarily mean that a party will escape sanctions under the court's inherent power." In re Mroz, 65 F.3d at 1575. Furthermore, Schwartz engaged in misconduct that went beyond the mere signing of pleadings, thereby making the inherent authority to sanction particularly appropriate. Consequently, as with the award of attorneys' fees, the additional sanction falls within the Court's inherent ability to sanction, regardless of whether it was permissible under Rule 9011.

In the alternative, we believe the additional sanction award can be affirmed under Rule 9011 in any event.

Relying on the current version of Rule 9011, Schwartz asserts that the Bankruptcy Court erred in failing to conduct a show cause hearing prior to imposing the additional sanction under Rule 9011. Rule 9011(c)(2)(B), as currently amended, provides that "[m]onetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned." Fed. R. Bankr. P. 9011(c)(2)(B) (1997). Initially, we note that Schwartz incorrectly asserts that the sanctions were made on the court's own initiative; the sanctions were awarded pursuant to the Debtors requests for sanctions.

Moreover, the version of Rule 9011 relied upon by Schwartz does not apply in this case. Rule 9011 was amended effective December 1, 1997, to track the 1993 amendment to Rule 11 of the Federal Rules of Civil Procedure. See Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc., 88 F.3d 368, 373 (6th Cir. 1996). At that time, significant changes were made to the rule, including the addition of the show cause requirement in Rule 9011(c)(2)(B). As relevant here, the prior version of Rule 9011 merely provides that the presence of an attorney's signature on a pleading or motion is a certificate that:

> the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well-grounded in fact and is warranted by existing law or a good faith argument for the extension,

modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause delay, or to increase in the cost of litigation. . . . If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

Fed. R. Bankr. P. 9011(a) (1987).[8] The prior version contained no requirement that the court issue an order to show cause before it could enter a monetary sanction award.

Contrary to Schwartz's contention at oral argument that we are to look at the rule in effect when the Bankruptcy Court entered the sanction order on August 14, 2000, Schwartz's conduct is to be reviewed under the standards applicable when his conduct took place. See Retired Chicago Police Assoc. v. Firemen's Annuity and Benefit Fund of Chicago, 145 F.3d 929, 933 (7th Cir. 1998) ("[a]lthough Rule 11 was amended in 1993, we review [the attorney's] conduct under the standards applicable when his conduct took place"); see also Runfola & Assocs. v. Spectrum Reporting II, 88 F.3d at 373 (it was within the district court's discretion as to which version of Rule 11 applied where rule was amended in the period between the improper conduct and the issuance of sanction order). In this case, the vast majority of the conduct considered by the Bankruptcy Court in making the Rule 9011 award occurred prior to the 1997 amendments to the Rule. Thus, the earlier version of the rule applies in this case and as a result, the Court was not required to conduct a show cause hearing prior to issuing sanctions.

Instead, under the prior version of Rule 9011, Schwartz was entitled to notice and an opportunity to be heard. As discussed above, there is no question following the District Court's remand and the Bankruptcy Court's notice, which expressly identified the hearing as "a hearing on the appropriate sanctions to be entered against Richard Schwartz" pursuant to the District Court's remand, that he received adequate due process on the issue of sanctions. See Snyder v. Dewoskin (In re Mahendra), 131 F.3d 750, 758 (8th Cir. 1997) (notice and opportunity to defend against potential sanctions charge satisfies due process under Rule 9011); In re Clark, 223 F.3d at 864-65 (an individual must receive notice and an opportunity to be

---

[8] Rule 9011 was amended in 1991 to clarify that it also applies to pleadings which cause unnecessary delay or needless increase in the cost of the administration of the estate; however, as pertinent here, the 1991 version of the rule was substantively the same as the 1987 version. See Fed. R. Bankr. P. Advisory Committee Note (1991 Amendment).

heard before sanctions may be imposed; notice is sufficient if it informs the parties that the court is considering imposing sanctions).

Schwartz next asserts that the Bankruptcy Court erred in imposing the $100,000 sanction in addition to the fee award already assessed, pointing out that Rule 9011(c)(2) identifies the possible types of sanctions under that rule in the disjunctive.[9]  However, as with the show cause requirement discussed immediately above, the language relied upon by Schwartz was added to the rule by the 1997 amendments: the prior version did not contain the disjunctive language cited by Schwartz.  Instead, the prior version of Rule 9011(a) merely provided that if a document was signed in violation of the rule, the court on motion or on its own initiative shall impose "an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee."  We find no restriction in this prior version of the rule limiting the sanctions in the manner suggested by Schwartz.  The only limitation contained therein is that the sanction be "appropriate."  Accord Kirk Capital Corp. v. Bailey, 16 F.3d 1485, 1490 (8th Cir. 1994) (discussing the differences between the old version and the new version of Rule 11 and concluding that the old rule simply requires an "appropriate sanction" and does not mandate that the sanctioning court go through

---

[9]  Rule 9011(c)(2), as currently amended, provides:

> A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated.  Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into the court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

Fed. R. Bankr. P. 9011(c)(2) (1997).

analyzing which sanction constitutes the least severe sanction that will adequately deter the undesirable conduct; the district court had discretion to impose nonmonetary sanctions but was not required to do so).[10]

Having determined that the prior version applies, sanctions under either version of Rule 9011 are tied to an attorney's signature on a pleading or document filed with the court. See In re Mroz, 65 F.3d at 1572. Sanctions are warranted when (1) the document is frivolous, legally unreasonable, or without factual foundation, or (2) the pleading is filed in bad faith or for an improper purpose. Id.

Here, even assuming Schwartz cannot be held accountable under Rule 9011 for filing the bankruptcy petition itself because he did not actually sign it, he filed several pleadings upon which the Bankruptcy Court could have appropriately based a Rule 9011 sanction, beginning with the motion to intervene on behalf of Tridon Corporation and Billboard Café in February 1990. The Bankruptcy Court had determined to be sanctionable already in its April 1990 decision on the ground that Schwartz had previously been advised that such conduct was inappropriate. In re Kujawa, 112 B.R. 968. Over the next ten years, Schwartz signed and filed several additional documents, all of which stemmed from his improper purpose in orchestrating the bankruptcy petition in the first place and refusing to stop the proceedings. As a result, the record contains sufficient bases for the Bankruptcy Court's finding that Schwartz violated Rule 9011 through his various filings in this case and we conclude that this finding was not erroneous. Since the Court properly found Schwartz violated Rule 9011, sanctions were mandatory. See In re Chisum, 847 F.2d 597 (9th Cir. 1988) (imposition of sanctions when there is a violation of Rule 9011 is mandatory and not discretionary); Ebersold v. DeLaughter (In re DeLaughter), 213 B.R. 839, 841 (B.A.P. 8th Cir. 1997)

---

[10] Because we have determined that the prior version of Rule 9011 applies, Schwartz's reliance on cases such as Hutchinson v. Pfeil, 208 F.3d 1180 (10th Cir. 2000), for both the proposition that he was entitled to a show cause hearing and the proposition that the Court could not award the two different types of sanctions, is misplaced. Not only is that case distinguishable on the facts, it is distinguishable because the Tenth Circuit relied on the current version of Rule 11 which is not applicable here. Moreover, we note that the Tenth Circuit mentioned the possibility that under certain exceptional circumstances, "actual notice and a real opportunity to be heard could substitute for the formal procedures specified in Fed. R. Civ. P. 11(c)." Id. at 1185. Considering the District Court's remand and the amount of due process afforded here, this case may very well qualify as such exceptional circumstances.

Additionally, even had the current version of Rule 9011 applied, Schwartz is incorrect that the word "or" in that rule must be applied in the disjunctive. See 11 U.S.C. § 102(5); Fed. R. Bankr. P. 9001.

("[v]iolations of [Rule 9011] mandate sanctions thereunder, and discretion, in this respect, is entirely removed from the court").

Having concluded that the Bankruptcy Court had the authority to award the sanction against Schwartz under either Rule 9011 or its inherent authority, we address his argument that the award itself was arbitrary, excessive, and unsupported by the evidence. In the August 14th Order, having nothing else to base its decision on, the Bankruptcy Court said:

> In assessing this sanction, the Court has considered that the legal profession is usually a financially rewarding profession and that Mr. Schwartz is a lawyer with considerable experience who continues to practice law. With no other financial information on which to base its decision, the Court has determined that $100,000.00 is an amount necessary to deter Schwartz from filing future involuntary petitions in bad faith without being excessive.

At first blush, and without knowledge of the framework of this case, Schwartz's contention that this finding was arbitrary appears to have some merit, considering the large amount of the sanction and the fact that it was made without benefit of Schwartz's personal financial information.

On the other hand, we must reject that argument because Schwartz refused to provide evidence on which the Court could more solidly base its award and he continues to oppose orders that he do so. "[I]n certain circumstances, a negative inference arises from a defendant's failure to produce documents shown to have been in his possession. The inference is that the documents would have been damaging to the defendant." Evans v. Robbins, 897 F.2d 966, 970 (8th Cir. 1990) (citations omitted).

> This adverse inference rule is applicable when the following factors are present: (1) it appears that the documentary evidence exists or existed; (2) the suppressing party has possession or control of the evidence; (3) the evidence is available to the suppressing party, but not to the party seeking production; (4) it appears that there has been actual suppression or withholding of evidence. 31A C.J.S. Evidence, § 156(2) (1964). The unfavorable inference resulting from refusal to produce documents is applicable when the withholding party has been called on in the interest of the truth to produce the documents.

Id. In addition, Schwartz states he has never raised ability to pay a sanction as an issue and in fact affirmatively declared that ability to pay was not an issue before the Bankruptcy Court. In light of Schwartz's blatant and continuing refusal to provide the Court with the evidence necessary to fashion the sanction award, as well as his continuing assertion that ability to pay a sanction is not an issue, we find Schwartz's argument that the award was excessive and arbitrary to be incongruous.

20

Additionally, we recognize that this was a relatively large sanction to be imposed against an attorney and that, as Schwartz asserts, some courts have criticized such large awards as an abuse of discretion. See e.g., Magnus Elecs., Inc. v. Masco Corp. of Indiana, 871 F.2d 626, 634 (7th Cir. 1989), cert. denied, 493 U.S. 891, and Blue v. U.S. Dept. of Army, 914 F.2d 525, 548 (4th Cir. 1990), cert. denied sub nom, 499 U.S. 959. Nevertheless, because the Court had nothing on which to base a lesser award, we find that in light of the particular facts of this case which need not be repeated again, the award was neither arbitrary nor excessive and therefore, the Bankruptcy Court's conclusion was not clearly erroneous.

Schwartz correctly asserts that Rule 9011 sanctions are intended to deter future conduct rather than to punish. See Cooter & Gell v. Hartmarx, 496 U.S. at 393, 110 S. Ct. at 3454. However, although the Bankruptcy Court primarily based this award on the goal of deterrence, it also likened the sanction to punitive damages. Since the award could also be affirmed under the Court's inherent authority, such a purpose is not forbidden. See Universal Coops., Inc. v. Tribal Co-operative Mktg. Dev. Fed'n of India, Ltd., 45 F.3d 1194, 1196 (8th Cir. 1995) (finding that while sanctions should not be lightly imposed, it is clear that sanctions are on occasion necessary not merely to penalize those whose conduct may be deemed to warrant such a sanction, but also to deter those who might be tempted to such conduct in the absence of such a deterrent).

Even assuming that the purpose of the award must be limited to deterrence, we are not persuaded by Schwartz's statements that he has been sufficiently deterred from filing such involuntary bankruptcy petitions and that the sanction was not necessary to do that. In arguing that the award was unnecessary to deter him from similar future conduct, Schwartz points out that he has not filed any involuntary petitions since 1989. However, this alone does not convince us that Schwartz has fully comprehended the nature of his conduct. We are particularly concerned that Schwartz still maintains, even here, that he should not have been sanctioned because the technical Code requirements for filing the involuntary petition against Kujawa were present. He also contends here that Kujawa had unclean hands because he defended against the improper petition. Based on this, we conclude that the record does not support Schwartz's argument that he has been sufficiently deterred from similar future conduct.

Although we have determined that the Bankruptcy Court had the authority to award the additional sanction and that it did not abuse its discretion to do so, we note that the Court did not specify to whom the sanction was payable. Since we have determined that this sanction was permissible under the Court's

21

inherent authority to sanction the attorneys who appear before it and was intended to deter Schwartz from future conduct as well as being "akin to punitive damages," this detail makes no difference to the conclusion that the sanction was within the Court's discretion. If necessary, the parties may seek clarification on that question from the Bankruptcy Court.

Finally, we note that although we have concluded that the sanctions imposed here were permissible under the Court's inherent authority, we wish to emphasize that the inherent power to impose sanctions should not be invoked lightly; however, as the District Court expressed its shock at what occurred in this case, we too find this case to present extraordinary circumstances making the inherent authority particularly applicable here.

### The Request for Return of the Financial Documents Filed Under Seal

Schwartz asks us to require the Bankruptcy Court to return to him the financial statement he filed under seal and which the Bankruptcy Court found to be defective. We recognize that personal tax and financial information is generally not discoverable except under certain circumstances. However, the Bankruptcy Court's request for the information to assist it in determining sanctions sufficient to deter Schwartz from engaging in similar conduct in the future was appropriate. We see no abuse of discretion in the Court's viewing the document for that limited purpose. As the financial statement was pertinent to the issue of appropriate sanctions, it became part of the record and must remain so, in its sealed form, until the appeal process is finished. We reject outright Schwartz's suggestion that allowing the Bankruptcy Court to retain the financial statement "runs the danger of additional breaches of confidentiality." We have no doubt that the Bankruptcy Court will retain the financial statement under seal and respect the confidentiality of the document until the appeal process is finished. We are also certain that at that time, the Bankruptcy Court will exercise its duty to return the document to Schwartz, as the Court indicated it would, in a confidential manner. Until then, the statement must remain part of the record, under seal. Schwartz's request that we require the Bankruptcy Court to return the financial statement is, therefore, denied.

CONCLUSION

For the foregoing reasons, the Orders entered by the Bankruptcy Court on June 2, 2000, and August 14, 2000, are affirmed. Schwartz's request for return of the document filed under seal is denied until the appeals process is finished.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL,
EIGHTH CIRCUIT.